1  Jacquelyn H Choi (SBN 211560)
   David Y. Choi (SBN 263917)
2  RIMON, P.C.
3  2029 Century Park East, Suite 400N
   Los Angeles, California 90067-2905
4  Telephone: (310) 525-5859
   Facsimile: (310) 525-5859
5  Email: jacquelyn.choi@rimonlaw.com
   Email: david.choi@rimonlaw.com
6

7  Attorneys for Plaintiffs,
   FREE SUNSHINE APPAREL, INC. and
8  MIN HEE LEE

9             **UNITED STATES BANKRUPTCY COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

11

| | |
|---|---|
| In re | Case No. 2:22-BK-12303-DS |
| KISLON KIM,<br>dba GOLD REED, dba HIGH CALL,<br><br>Debtor. | Chapter 7 |
| FREE SUNSHINE APPAREL, INC. , a<br>California Corporation; and MIN HEE LEE,<br>an individual,<br><br>Plaintiffs,<br><br>v.<br><br>KISLON KIM, dba GOLD REED, dba HIGH<br>CALL, and DOES 1-10<br><br>Defendants. | Adv No. 2:22-ap-01146-DS<br><br>**PROOF OF SERVICE** |

25        I, <u>Esteban Garcia</u>, certify as follows:

26        I am employed in the County of San Diego, State of California. My business address is 3579

27  4ᵗʰ Avenue, San Diego, CA 92103. I am over the age of eighteen years and not a party to this cause.

28

1      On July 18, 2022, true and correct copies of:

2   • **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY**

3      **PROCEEDING [LBR 7004-1] with ATTACHMENT A**

4   • **ADVERSARY PROCEEDING STATUS CONFERENCE PROCEDURES with**

5      **EXHIBIT A**

6   • **ADVERSARY PROCEEDING COVER SHEET**

7   • **COMPLAINT FOR DETERMINATION OF NON-DISCHARGEBILITY OF DEBTS**

8      **PURSUANT TO 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6) with EXHIBITS A-E**

9   • **PROOF OF SERVICE**

10  were caused to be served on the following entities as indicated below, by the Court via NEF and

11  hyperlink to the documents and/or by First Class United States Mail:

12  **DEFENDANTS**                              **UNITED STATES TRUSTEE**
    **(via First Class U.S. Mail)**             **(via ECF)**
13  Kislon Kim dba Gold Reed;                   ustpregion16.la.ecf@usdoj.gov
    dba High Call
14  1162 4th Ave., Apt. 3
15  Los Angeles, CA 90019                       **CHAPTER 7 TRUSTEE**
                                                **(via ECF)**
16  Gold Reed                                   John P. Pringle, TR
17  458 S. San Pedro St. #L48                   brenfro@rpmlaw.com,
    Los Angeles, CA 90015                       jpp@trustesolutions.net,
18                                              jpringle@rpmlaw.com

19  High Call                                   **OTHER PARTIES IN INTEREST**
    1458 S. San Pedro St. #L48                  **(via Electronic Mail)**
20  Los Angeles, CA 90015                       Sung Woo Choi
                                                choi@logoslawyers.com
21

22

23  I declare under penalty of perjury that the foregoing is true and correct.

24  Dated:  July 18, 2022

25                                      By: /s/ *Esteban Garcia*
                                             ESTEBAN GARCIA
26

27

28

                                      2

# EXHIBIT "1"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Jacquelyn H Choi<br>Rimon, P.C.<br>2029 Century Park East<br>Suite 400N<br>Los Angeles, CA 90067<br><br>213–375–3811<br><br><br><br><br><br>_Plaintiff or Attorney for Plaintiff_ | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| In re:<br><br>Kislon Kim<br><br><br><br>Debtor(s). | CASE NO.: 2:22–bk–12303–DS<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: 2:22–ap–01146–DS |
|---|---|
| Free Sunshine Apparel, Inc. a California Corporation<br><br>**(See Attachment A for names of additional plaintiffs)**<br>Plaintiff(s)<br><br>Versus<br><br>Kislon Kim, dba Gold Reed, dba High Call<br><br>**(See Attachment A for names of additional defendants)**<br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left–hand corner of this page. The deadline to file and serve a written response is **08/17/2022.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **September 22, 2022** |
| **Time:** | **11:30 AM** |
| **Hearing Judge:** | **Deborah J. Saltzman** |
| **Location:** | **255 E Temple St., Crtrm 1639, Los Angeles, CA 90012** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2016_                    Page 1                    **F 7004–1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: July 18, 2022

By: _____"s/" Mary Bakchellian_____

Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                  Page 2                  **F 7004–1.SUMMONS.ADV.PROC**

# ATTACHMENT A
## Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| Free Sunshine Apparel, Inc. a California Corporation<br>Min Hee Lee | Kislon Kim, dba Gold Reed, dba High Call<br>DOES 1–10 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# ATTACHMENT A

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

_____

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____ | _____ | _____ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                                                    **F 7004–1.SUMMONS.ADV.PROC**

## ADVERSARY PROCEEDING STATUS CONFERENCE PROCEDURES
## JUDGE DEBORAH J. SALTZMAN

1.     The court will set an initial status conference in all adversary proceedings to be held approximately 60 days after the matter is filed.  All parties must appear in person at the initial status conference in person.  Counsel appearing at the initial status conference must be trial counsel.  Unless otherwise ordered by the court, parties and counsel may attend subsequent status conferences telephonically in accordance with Judge Saltzman's telephonic appearance procedures, which are available on the court's website, www.cacb.uscourts.gov, by clicking on "Judges," and then the judge's name.

2.     A thorough status report must be filed 14 days before each status conference.  The status report must be prepared on the Local Rule Form F 7016-1.STATUS.REPORT.  This form is available on the court's website, and the plaintiff must attach a copy of the form to this document as Exhibit A.  Failure to file a joint status report may result in the imposition of monetary sanctions and/or the status conference being continued, and parties being ordered to redo the status report.

3.     If a party does not cooperate in preparation of a joint status report, the other party should follow the procedure set forth in LBR 7016-1(a)(3) for filing a unilateral status report.

4.     A status report is not required *only* in the following limited circumstances:

A.     Prior to the date scheduled for the status conference, the parties have filed and the court has entered an order approving a stipulation that resolves all issues raised by the adversary proceeding and provides either for dismissal of the action in its entirety or the entry of judgment in the action.

B.     Defaults have been entered as against all defendants and the plaintiff has filed and served a motion for default judgment prior to the date scheduled for the status conference.

C.     The parties have filed, and prior to the date scheduled for the status conference, the court has entered an order approving, a stipulation continuing the status conference to a later date (in which case a written status report must be filed not less than 14 days in advance of the continued status conference date).

D.     The court has expressly relieved the parties of the obligation to file a written status report.

Revised 5/15/20

5.      Unless one of the four exceptions outlined above applies, status reports must be filed in a timely manner.  Parties that fail to do so will be subject to a minimum sanction of $150, or such other sanctions as may be warranted under the circumstances or allowed under Local Bankruptcy Rule 7016-1(f).

6.      Failure to appear for a status conference may result in a minimum sanction of $300, dismissal of the adversary proceeding for failure to prosecute or such other sanctions as may be warranted under the circumstances or allowed under Local Bankruptcy Rule 7016-1(f).

7.      If a response to the complaint is not timely filed:

A.      The plaintiff should file a request for entry of default by the clerk. The plaintiff also may request entry of a default judgment by filing and serving (if necessary) an appropriate motion; see Fed. R. Bankr. P. 7055 and Local Bankruptcy Rule 7055-1;

<u>AND</u>

B.      No later than ten days prior to the status conference, each appearing party must file a Unilateral Status Report (containing the information set forth in Sections A-E of Local Rule Form F 7016-1.STATUS.REPORT) as required by Local Bankruptcy Rule 7016-1(a)(3).

8.      Unless otherwise ordered by the court, within seven days after the status conference, the plaintiff must submit a scheduling order that complies with Local Bankruptcy Rule 7016-1(a)(4).

9.      Stipulations for extensions of time are ineffective unless approved by the court. The court is likely to deny requests to extend a response deadline to a date within five days of the hearing date unless the hearing date is continued to a date which permits the court adequate time to consider the papers.

10.     A copy of these instructions—including Exhibit A, Local Rule Form F 7016-1.STATUS.REPORT—must be attached to every copy of the complaint served upon a party, and the affidavit of service must state that these instructions were served along with a copy of the summons and complaint.

# EXHIBIT A

(The plaintiff shall attach a copy of Local Rule Form
F 7016-1.STATUS.REPORT here)

Revised 5/15/20

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ☐ *Individual appearing without attorney* <br> ☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -** _____ **DIVISION**

| In re: | CASE NO.: <br><br> ADVERSARY NO.: <br><br> CHAPTER: |
|---|---|
| Debtor(s). | |

| | **JOINT STATUS REPORT** <br> **[LBR 7016-1(a)(2)]** |
|---|---|
| vs. <br><br> Plaintiff(s). | DATE: <br> TIME: <br> COURTROOM: <br> ADDRESS: |
| Defendant(s). | |

The parties submit the following JOINT STATUS REPORT in accordance with LBR 7016-1(a)(2):

**A. <u>PLEADINGS/SERVICE</u>:**

    1.  Have all parties been served with the complaint/counterclaim/cross-claim, etc. (Claims Documents)?     ☐ Yes   ☐ No

    2.  Have all parties filed and served answers to the Claims Documents?     ☐ Yes   ☐ No

    3.  Have all motions addressed to the Claims Documents been resolved?     ☐ Yes   ☐ No

    4.  Have counsel met and conferred in compliance with LBR 7026-1?     ☐ Yes   ☐ No

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

5. If your answer to any of the four preceding questions is anything <u>other</u> than an unqualified "YES," please explain below (*or on attached page*):

**B.  <u>READINESS FOR TRIAL</u>:**

1. When will you be ready for trial in this case?

<u>Plaintiff</u>                              <u>Defendant</u>

2. If your answer to the above is more than 4 months after the summons issued in this case, give reasons for further delay.

<u>Plaintiff</u>                              <u>Defendant</u>

3. When do you expect to complete <u>your</u> discovery efforts?

<u>Plaintiff</u>                              <u>Defendant</u>

4. What additional discovery do you require to prepare for trial?

<u>Plaintiff</u>                              <u>Defendant</u>

**C.  <u>TRIAL TIME</u>:**

1. What is your estimate of the time required to present <u>your side of the case</u> at trial (*including rebuttal stage if applicable*)?

<u>Plaintiff</u>                              <u>Defendant</u>

2. How many witnesses do you intend to call at trial (*including opposing parties*)?

<u>Plaintiff</u>                              <u>Defendant</u>

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*                    Page 2                    **F 7016-1.STATUS.REPORT**

3. How many exhibits do you anticipate using at trial?

<u>Plaintiff</u>                                          <u>Defendant</u>

**D.** **PRETRIAL CONFERENCE:**

A pretrial conference is usually conducted between a week to a month before trial, at which time a pretrial order will be signed by the court. [See LBR 7016-1.] If you believe that a pre-trial conference is not necessary or appropriate in this case, please so note below, stating your reasons:

<u>Plaintiff</u>                                          <u>Defendant</u>
Pretrial conference ☐ is ☐ is not requested        Pretrial conference ☐ is ☐ is not requested
Reasons:                                             Reasons:

<u>Plaintiff</u>                                          <u>Defendant</u>
Pretrial conference should be set <u>after</u>:          Pretrial conference should be set <u>after</u>:

(*date*) _____                               (*date*) _____

**E.** **SETTLEMENT:**

1. What is the status of settlement efforts?

2. Has this dispute been formally mediated?        ☐ Yes    ☐ No
   If so, when?

3. Do you want this matter sent to mediation at this time?

<u>Plaintiff</u>                                          <u>Defendant</u>

☐ Yes    ☐ No                                       ☐ Yes    ☐ No

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*                        Page 3                        **F 7016-1.STATUS.REPORT**

**F.  FINAL JUDGMENT/ORDER:**

Any party who contests the bankruptcy court's authority to enter a final judgment and/or order in this adversary proceeding must raise its objection below.  Failure to select either box below may be deemed consent.

<u>Plaintiff</u>                                                    <u>Defendant</u>

☐ I do consent                                          ☐ I do consent
☐ I do not consent                                    ☐ I do not consent
to the bankruptcy court's entry of a final judgment    to the bankruptcy court's entry of a final judgment
and/or order in this adversary proceeding.         and/or order in this adversary proceeding.

**G.   ADDITIONAL COMMENTS/RECOMMENDATIONS RE TRIAL:** (*Use additional page if necessary*)

Respectfully submitted,

Date: _____                              Date: _____

_____              _____
Printed name of law firm                             Printed name of law firm

_____              _____
Signature                                                     Signature

_____              _____
Printed name                                                Printed name

Attorney for: _____              Attorney for: _____

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **JOINT STATUS REPORT [LBR 7016-1(a)(2)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____ | _____ | _____ |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

                                         **F 7016-1.STATUS.REPORT**

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>FREE SUNSHINE APPAREL, INC., a California Corporation; and MIN HEE LEE, an individual, | DEFENDANTS<br>KISLON KIM, dba GOLD REED, dba HIGH CALL, and DOES 1-10; |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Jacquelyn H. Choi (SBN 211560)<br>RIMON, P.C., 2029 Century Park East, Suite 400N, Los Angeles, CA 90067-2905<br>Telephone: (310) 525-5859; Facsimile: (310) 525-5859<br>Email: jacquelyn.choi@rimonlaw.com | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

DETERMINATION OF NON-DISCHARGEBILITY OF DEBTS PURSUANT TO 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ TBD |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>KISLON KIM,<br>dba GOLD REED, dba HIGH CALL, | BANKRUPTCY CASE NO.<br>2:22-BK-12303-DS | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles Division | NAME OF JUDGE<br>Hon. Judge Saltzman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>July 15, 2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jacquelyn H. Choi | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  Jacquelyn H. Choi (SBN 211560)
   David Y. Choi (SBN 263917)
2  RIMON, P.C.
   2029 Century Park East, Suite 400N
3  Los Angeles, California 90067-2905
   Telephone: (310) 525-5859
4  Facsimile: (310) 525-5859
   Email: jacquelyn.choi@rimonlaw.com
5  Email: david.choi@rimonlaw.com

6  Attorneys for Plaintiffs,
   FREE SUNSHINE APPAREL, INC. and
7  MIN HEE LEE

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **LOS ANGELES DIVISION**

11  In re                                   | Case No. 2:22-BK-12303-DS

12  KISLON KIM,                             | Chapter 7
    dba GOLD REED, dba HIGH CALL,
13
               Debtor.
14  _____

15
16  FREE SUNSHINE APPAREL, INC. , a
    California Corporation; and MIN HEE LEE, | Adv No. _____
17  an individual,

18               Plaintiffs,               | **COMPLAINT FOR DETERMINATION
                                            OF NON-DISCHARGEBILITY OF DEBTS
19          v.                              PURSUANT TO 11 U.S.C. §§ 523(a)(2),
                                            523(a)(4) and 523(a)(6)**
20
21  KISLON KIM,
    dba GOLD REED, dba HIGH CALL, and
22  DOES 1-10;

23               Defendants.
    _____

24

25         Plaintiffs, FREE SUNSHINE APPAREL, INC. ("*FSA*") and MIN HEE LEE ("*Ms. Lee*")

26  (collectively, "*Plaintiffs*"), the Plaintiffs in the above-captioned adversary proceeding, respectfully

27  represent and allege, as follows:

28                                          1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

2.      This action is a core proceeding under 28 U.S.C. §157(b)(2)(A), (I) and (O).  This adversary proceeding arises under, arises in and is related to the bankruptcy case of *In re Kislon Kim* which was commenced on April 25, 2022 (bearing case no. 2:22-BK-12303-DS), presently pending before the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

3.      This Court can and should enter a final judgment herein.

4.      This adversary proceeding is brought pursuant to Rules 7001(6) and 4007 of the Federal Rules of Bankruptcy Procedure and pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6) to determine the dischargeability of particular debts.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PARTIES

6.      Plaintiff FREE SUNSHINE APPAREL, INC. ("***FSA***"), is and at all times relevant hereto was, a corporation organized and existing by virtue of the laws of the state of California and doing business as "Blue Buttercup" in the County of Los Angeles whose principal office is located at 2842 S. Grand Avenue, Los Angeles, California 90007.

7.      Plaintiff MIN HEE LEE aka LAUREN LEE ("***Ms. Lee***") is an individual residing in Los Angeles County and is the Chief Executive Officer of FSA.

8.      Plaintiff is informed and believes, and based thereon alleges, that defendant, Kislon Kim, dba Gold Reed, dba High Call (the "***Debtor***" or "***Defendant***"), is and at all times relevant hereto, was an individual residing at 1162 4th Avenue, Apt. 3, Los Angeles, California 90019 and the Debtor in the above-captioned bankruptcy case.

2

## GENERAL ALLEGATIONS

**A.    The Joint Venture**

9.    FSA is a wholesale manufacturer of women's clothing duly organized for the purpose of selling its products online as a "wholesale online shopping mall".  Ms. Lee is the founder and Chief Executive Officer of FSA.

10.    Ms. Lee is a highly successful and well-known executive designer in the Los Angeles downtown apparel industry with more than ten (10) years of experience in the fashion industry.

11.    On or about July 10, 2020, Ms. Lee informed the Debtor, a friend of approximately four (4) years, of FSA's formation.  In response, the Debtor informed Ms. Lee that she was qualified as an importer of manufactured women's clothing from China and that she had connections to manufacturers in China (the "*Manufacturers*").  The Debtor requested Ms. Lee to import FSA's winter line designs (the "*Winter Line*") through Debtor's company (the "*Imports*").

12.    Ms. Lee asked the Debtor if her company and the Manufacturers could produce and timely deliver the Imports on schedule.  The Debtor assured Ms. Lee that her company and the Manufacturers would produce FSA's Imports on time and that they would be of the highest quality. Thus, Ms. Lee began sending the Debtor her designs, sample pictures, original samples, color schemes, fabrications, fits, production ideas, marketing ideas, and other design ideas (collectively "*Designs*") solely for the purpose of manufacturing FSA's Winter Line in China for wholesale by FSA.

13.    At all relevant times herein, FSA, through Ms. Lee, emphasized to the Debtor the significance of maintaining FSA's confidentiality as to FSA's designs, fabrics, photos and other FSA trade secrets.

14.    On or about July 24, 2019 and thereafter, the Debtor agreed not to disclose any of FSA's Designs to any third-party other than the Manufacturers.  Based upon Ms. Lee's complete reliance on Debtor's promises, Ms. Lee agreed to continue sending the Designs to the Debtor solely for the purpose of production by the Manufacturers to import the manufactured women's apparel into

3

the U.S. market, and the Debtor agreed to serve as a broker between FSA and the Manufacturers (the "*Joint Venture*").  The Debtor agreed not to sell, distribute, or in any way disclose to any third-party, except for the sole purpose of production, any of the Imports, Designs, or any other information disclosed to her in reference to the Imports.

15.    On or about July 31, 2019, the Debtor informed Ms. Lee that most of the Imports would be delivered by mid-October, 2019 and that the rest of the Imports would be delivered by early November, 2019.  Based upon Debtor's assurances not to sell, distribute, or in any way disclose any of FSA's Imports and Designs and relying on the Debtor's promises that Imports would be delivered by October or early November 2019, Ms. Lee continued to send FSA's Designs to the Debtor for the sole purpose of manufacturing the goods in China.

**B.    The Deposit**

16.    On or about August 1, 2019, the Debtor and FSA agreed to an approximate thirty percent (30%) deposit (the "*Deposit*") for Imports to be paid to Debtor pursuant to Debtor's instructions.  FSA further agreed to pay the remaining balance two (2) weeks after receiving and inspecting the Imports.  FSA, through Ms. Lee, sent the Debtor specific design information for manufacture together with instructions on the design, fit, fabric, pattern, and colors for manufacture.

17.    On or about August 9, 2019, as requested by the Debtor, FSA paid $4,248 to one of the Debtor's controlled entities, PSD.

18.    On or about August 22, 2019, as requested by the Debtor, (1) FSA paid $6,093 to Gold Reed; (2) FSA paid $3,000 to Debtor; and (3) FSA paid $3,093 to Debtor.

19.    On or about August 23, 2019 as requested by the Debtor, FSA paid $2,500 to the Debtor.

20.    On or about August 30, 2019, the Debtor, through Gold Reed, delivered to FSA, various invoices requesting payment in the total sum of $30,018 and deposit of $9,005.40.  FSA paid those amounts as requested by the Debtor.

21.    On or about September 9, 2019, the Debtor, through Gold Reed, delivered to FSA

4

certain other invoices requesting payment in the total sum of $18,492 and deposit of $5,547.60.  After some deductions agreed upon by the parties, FSA paid Gold Reed $3,423.60 as requested by the Debtor.

22.    On or about September 16, 2019, the Debtor, through Gold Reed, delivered to FSA certain other invoices requesting payment in the total sum of $12,396 and a deposit of $3,718.80, which was paid by FSA to Gold Reed as requested by the Debtor.

23.    On or about September 25, 2019, the Debtor, through Gold Reed, delivered to FSA certain other invoices requesting payment in the total sum of $5,502 and deposit of $1,650.60 which, after some deductions agreed upon by the parties, FSA paid Gold Reed $1,164.00 as requested by the Debtor.

24.    FSA's total Deposit to the Debtor was equal to $36,245.80 to begin the manufacturing and import process with shipment and delivery scheduled for mid-October 2019 and/or early November 2019.

**C.    The Debtor's Breach**

25.    The Debtor completely failed to deliver the Products to FSA and FSA has not received any other production delivery or information concerning the Products.  FSA also did not receive any refunds from the Deposit that it tendered to Debtor and the Debtor refused and continues to refuse to respond to any inquiries in reference to the Products.

26.    Upon information and belief, on or around November 27, 2019, FSA uncovered online sales of certain Imports and Products marketed by the Debtor and/or Defendants for their use, profit and/or gain.

27.    Based upon Debtor's willful breach resulting in FSA's inability to deliver the Products to its customers despite pre-order sales of the Products, FSA has incurred severe damages, including, without limitation, damage to FSA's reputation and good-will, in an amount which Plaintiffs believe exceeds $700,000.00, to be determined at trial.

28.    On or about November 29, 2019, FSA issued the Debtor and various Defendants a

5

Notice to Cease and Desist and Preserve Evidence via certified mail.  However, such Notice was ignored as the Defendants actually increased the number of Products listed for sale via an on-line website known as www.fashiongo.net.

29.    Plaintiffs are informed and believe, and based thereon allege, that the Debtor may have fraudulently transferred assets from one or more of her businesses with the intention to render these entities insolvent and/or judgment proof against any monetary judgment obtained by Plaintiffs.

**D.    The State Court Action**

30.    In December 2019, Plaintiffs filed a complaint against the Debtor and approximately twenty-two (22) other defendants in the Superior Court of the State of California, County of Los Angeles (Case No. 19STCV45311) (the "***State Court Action***"), alleging numerous causes of action, including, breach of contract, declaratory and injunctive relief.

31.    On or around July 22, 2020, Plaintiff filed a *Verified First Amended Complaint For: (1) Declaratory and Injunctive Relief; (2) Breach of Contract; (3) Breach of Uniform Commercial Code Article 2; (4) Common Counts; (5) Fraud and Conspiracy; (6) Conversion; (7) Trespass to Chattels; (8) Identify Theft; (9) Appropriation of Name or Likeness; (10) Intentional Interference of Prospective Economic Advantage; (13) Breach of Fiduciary Duty; (14) Breach of the Duty of Loyalty; (15) Fraudulent Transfer; (16) Unethical Business Practices in Violation of California Business and Professions Code Section 17200 et seq.* against twenty-two (22) defendants, including, Kislon Kim (the "***Debtor***"), PSD Studio, Inc., Gold Reed, Cream, High Call, Grace Kim, Lumie, Inc., Branche Apparel, Inc., IT Closet, So Young Jung, Reveuse, Onyrmrk, Lumie & Junnie, Sanghun Lee, Sung Light Clothing, Inc., La Vida, Sung C. Lee, Olive and Leaf, American Fit, BNS, Inc., Il Biano, Photojio and does 1 through 100 (Case No. 19STCV45311) (the "***Amended Complaint***") in the Superior Court of the State of California, County of Los Angeles (the "***State Court***").  A true and correct copy of the Amended Complaint is attached hereto as **Exhibit "A"**.

32.    Plaintiffs alleged that the Debtor, serving as the Plaintiffs' broker, coordinated efforts with Plaintiffs' business competitors to re-label certain apparel products with defendants'

brand labels and re-directed shipments of products designated for Movants to themselves.  Plaintiffs further alleged that the Debtor and Defendants then marketed and sold those re-branded products as their own causing a deleterious effect on Plaintiffs' business because they were originally intended to be used to market the launch of Ms. Lee's very first clothing line.

33.    Plaintiffs further alleged, that upon information and belief, there exists a unity of interest and ownership between the Debtor and defendants, Gold Reed, Cream, High Call, Il Bianco, and PSD Studio, Inc. ("**PSD**") such that there was no individuality and separateness between them and that those defendants were alter egos of the Debtor and merely a shell and sham through which Debtor transacted her businesses.

34.    On October 22, 2020, the State Court granted a preliminary injunction against all defendants (and DOES) and the preliminary injunction is still in effect.  A true and correct copy of the *Notice of Entry of Order Re: Temporary Restraining Order and Order to Show Cause* is attached hereto as **Exhibit "B".**  On October 26, 2020, FSA caused to be deposited a bond of thirty thousand dollars ($30,000.00) with the State Court.  A true and correct copy of the *Notice of Entry of Order Re: Preliminary Injunction and Proof of Bond* is attached hereto as **Exhibit "C".**

35.    As of the Petition Date (as defined below), the following sixteen (16) defendants (collectively, the "**Defendants**") remain defendants in the State Court Action: the Debtor, PSD Studio, Inc. (dba Gold Reed, High Call and Cream), Grace Kim aka Nahm Sook Kim, Lumie, Inc., Branche Apparel, Inc. (dba IT Closet, Reveuse, Onyrmrk, Lumie & Junnie), Sanghun Lee aka Sang Hun Lee, Sung Light Clothing, Inc. (dba La Vida), Sung C. Lee, Galaxy Trim, Inc. (dba Olive and Leaf), Laletizia, Inc. (dba Il Bianco), BNS, Inc. (dba American Fit), Sangyong Kim, Andy Lee, Jong Min Kim, Ivy Lee and Kissky, Inc.

36.    Plaintiffs conducted extensive discovery in the State Court Action and obtained favorable admissions from one or more of the Defendants.  On the other hand, the Defendants did not conduct any discovery in the State Court Action.

37.    Trial in the State Court Action was originally set to proceed on March 1, 2022 at 9:30

7

a.m.  On February 22, 2022, several of the Defendants, including the Debtor, requested, on an ex parte

basis, a continuance of trial.  The State Court granted a short continuance of trial to March 25, 2022.

A true and correct copy of the *Notice of Ruling Re: Defendant's Ex Parte Application to Continue*

*Trial* is attached hereto as **Exhibit "D".**

38.    On March 23, 2022,  the Debtor made a second ex parte request to continue the trial

contending that the Debtor was under doctor's orders while visiting her sick family member outside

the country.  The State Court granted a second short continuance of trial from March 25, 2022 to April

25, 2022.  A true and correct copy of the *Notice of Ruling Re: Defendant Kislon Kim's Ex Parte*

*Application to Continue Trial* is attached hereto as **Exhibit "E".**

**E.    The Debtor's Bankruptcy Filing And Removal**

39.    On April 25, 2022 (the "***Petition Date***") at approximately 9:22 a.m. (8 minutes before

trial), the Debtor commenced the instant bankruptcy case by filing a voluntary petition under chapter

7 of Title 11 [Docket No. 1].

40.    On April 26, 2022, at approximately 5:15 p.m., the Debtor filed a *Notice of Removal of*

*State Court Action* [Removal Adv. Docket No. 1] (the "***Removal Notice***") thereby removing the State

Court Action to the Bankruptcy Court (the "***Removal Adversary***").  In the Removal Notice, the

Debtor disclosed that she was an "indispensable party" in the State Court Action pursuant to Rule

19(a)(1)(A) of the Federal Rules of Civil Procedure and Federal Rule of Bankruptcy Procedure 7019.

41.    On May 9, 2022, the Debtor filed her Schedules and Statement of Financial Affairs

[Docket No. 18] listing FSA as an unsecured creditor who is owed $2,500,000.00 and disclosing the

pending State Court Action.

42.    On April 26, 2022, ten (10) of the Defendants (namely, BNS, Inc., Sanghun Lee,

Lumie Inc., Branche Apparel, Inc., Grace Kim, Ivy Lee, Sung C. Lee, Sung Light Clothing, Inc.,

Olive and Leaf and Il Bianco) filed declarations granting their consent to the Debtor's removal of the

State Court Action each contending that the Debtor is the "main" defendant in the State Court Action

[Removal Adversary Docket Nos. 3-9].

8

**F.**     **Movants' Remand Motion**

43.     On May 26, 2022, Movants filed *a Motion to Abstain, Or In The Alternative, Motion To Remand; Memorandum of Points and Authorities; and Declaration of David Rho in Support Thereof* [Adv. Docket No. 17] (the "**Remand Motion**").

44.     On June 10, 2022, the Debtor and the Defendants filed an opposition to the Remand Motion [Adv Docket No. 20]. On June 15, 2022, Plaintiffs filed a reply [Removal Adversary Docket No. 21].

45.     On June 23, 2022, a hearing was held to consider the Remand Motion. After oral argument, the Court granted the Remand Motion.

46.     On June 27, 2022, the Court entered an *Order Granting Motion To Abstain, Or, In The Alternative, Motion to Remand* [Removal Adversary Docket No. 25].

47.     On June 28, 2022, the clerk of the United States Bankruptcy Court for the Central District issued a *Transmittal Letter* with a certified copy of the Remand Order [Adv. Docket No. 27].

48.     On June 30, 2022, the Adversary Proceeding was closed [Removal Adversary Docket No. 29].

**G.**     **Plaintiffs' Relief From Stay Motion**

49.     On July 7, 2022, the Plaintiffs filed a *Motion For Relief From The Automatic Stay Pursuant To 11 U.S.C. § 362(d)(1)* [Docket No. 24] (the "**Relief From Stay Motion**") seeking relief from stay to prosecute the State Court Action against the Debtor. The hearing is set for July 28, 2022 at 11:30 a.m.

**FIRST CLAIM FOR RELIEF**

**(For Determination That Debt Is Nondischargeable Pursuant
To 11 U.S.C. § 523(a)(2)(A))**

50.     Plaintiffs reallege and incorporate herein by reference the allegations in paragraphs 1 through 49, above as though fully set forth herein.

51.     11 U.S.C. § 523(a)(2)(A) provides, in relevant part, that:

9

A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —

(2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by  —

> (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

52.    The Plaintiffs are informed and believe, and based thereon allege, that the Debtor, through false pretenses, a false representation, or actual fraud, obtained a Deposit of not less than $36,245.80 from FSA in connection with the delivery of Imports and Products, which Debtor knew, could not be delivered to FSA or fulfilled under the Joint Venture.

53.    Plaintiffs are informed and believe, and based thereon allege, that the Debtor falsely represented to FSA, among other things, that: (i) the Debtor and various Defendants would serve as a broker for import of Products from Manufacturers in China solely for the benefit of FSA; (ii) the Debtor and various Defendants would not sell, distribute, or disclose to any third party any of the Imports, Products, samples, designs, photos, ideas and any other property of FSA except to Manufacturers solely for the purpose of production; (iii) the Debtor and various Defendants would provide all samples of the Products to FSA and would not distribute or disclose to any other third party; and (iv) the Debtor and various Defendants would deliver the finished Products to FSA by on or about October 15, 2019 and/or early November after inspection and approval as customary in the garment industry (collectively, the "***False Representations***").

54.    Plaintiffs are informed and believe, and based thereon allege, that the Debtor's representations to Plaintiffs were materially false, were made with knowledge that these representations were false and/or with reckless indifference to their truth and/or the truth was concealed from Plaintiffs.

55.    Plaintiffs are informed and believes, and based thereon allege, that at the time Debtor made these False Representations, the Debtor intended to defraud and/or deceive Plaintiffs by

10

inducing Plaintiff to rely on these False Representations concerning, among other things, the Debtor's agreement to deliver the Products to Plaintiffs and Debtor's conversion of Plaintiffs' Imports for Debtor's own use, profit and/or gain.

56.     Plaintiffs are informed and believe, and based thereon allege, that the Debtor's False Representations induced Plaintiffs to enter into the Joint Venture and further induced Plaintiffs to continue to fund the Debtor and/or her business entities in an amount not less than $36,245.80, as directed by the Debtor, in direct reliance on Debtor's false representations, thereby causing Plaintiffs to suffer a financial loss.

57.     Plaintiffs are informed and believe, and based thereon allege, that Plaintiffs' reliance on the Debtor's False Representations was actual and justifiable under the totality of the circumstances and the falsity of such misrepresentations could not have been readily apparent to Plaintiffs.

58.     Plaintiffs are informed and believe, and based thereon allege, that Plaintiffs' justifiable reliance upon Debtor's False Representations proximately caused Plaintiffs to incur damages, in an amount to be determined at trial, but not less than the total sum of $700,000.00, plus accruing interest, costs, attorneys' fees, expenses and other charges attributable to Plaintiffs' damages (collectively, "***Plaintiffs' Damages***").

59.     At the time that these False Representations were made, Plaintiffs were ignorant of, and in the exercise of reasonable diligence could not have discovered the truth or Debtor's true intentions.  Had Plaintiffs known the truth, Plaintiffs would not have advanced the Deposit to Debtor or entered into the Joint Venture.

60.     Accordingly, Plaintiffs are entitled to have their debt determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF

**(For Determination That Debt Is Nondischargeable Pursuant
To 11 U.S.C. § 523(a)(4))**

61.     Plaintiffs reallege and incorporate herein by reference the allegations in paragraphs 1

11

through 60, above as though fully set forth herein.

62.    11 U.S.C. § 523(a)(4) provides, in relevant part, that:

A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —

(4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

63.    Plaintiffs are informed and believe, and based thereon allege, that the Debtor served in a fiduciary capacity based upon her management, operation and/or control over various Defendants, including, without limitation, Gold Reed and PSD.

64.    Plaintiffs are informed and believe, and based thereon allege, that by reason of the fraudulent manner in which the Debtor possessed the Deposit from Plaintiffs, namely, by Debtor's False Representations, including falsely representing Debtor's intention to deliver or cause to be delivered the Imports and Products to FSA, the Debtors' concealment regarding Debtor's online sales of certain Imports and Products marketed by the Debtor for her use, profit and/or gain, in which the Debtor knew, to be materially fraudulent, the Debtor engaged in fraud or defalcation while acting in a fiduciary capacity.

65.    Plaintiffs are informed and believes, and based thereon allege, that the Debtor committed embezzlement and larceny by fraudulently inducing Plaintiffs to issue a monetary Deposit to Debtor and/or her business entities in an amount not less than $36,245.80.

66.    Plaintiffs are informed and believe, and based thereon allege, that Debtor's fraud or defalcation while acting in a fiduciary capacity and Debtor's embezzlement and/or larceny proximately caused Plaintiffs' damages, in an amount to be determined at trial, but not less than $700,000.00, plus accruing interest, costs, attorneys' fees, expenses and other charges attributable to Plaintiffs' damages.

67.    Accordingly, Plaintiffs are entitled to have their debt determined nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

12

### THIRD CLAIM FOR RELIEF

**(For Determination That Debt Is Nondischargeable Pursuant
To 11 U.S.C. § 523(a)(6))**

68.     Plaintiffs reallege and incorporate herein by reference the allegations in paragraphs 1 through 67, above as though fully set forth herein.

69.     11 U.S.C. § 523(a)(6) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

70.     The Plaintiffs are informed and believe, and based thereon allege, that by falsely representing that (i) the Debtor and various Defendants would act as a broker for import of Products from Manufacturers in China solely for the benefit of FSA; (ii) the Debtor and various Defendants would not sell, distribute, or disclose to any third party any of the Imports, Products, samples, designs, photos, ideas and any other property of FSA except to Manufacturers solely for the purpose of production; (iii) the Debtor and various Defendants would provide all samples of the Products to FSA and would not distribute or disclose to any other third party; and (iv) the Debtor and various Defendants would deliver the finished Products to FSA by on or about October 15, 2019 and/or early November after inspection and approval as customary in the garment industry, in which Debtor knew, to be materially false in order to induce Plaintiffs to fund the total sum of $700,000.00 on behalf of the Debtor, the Debtor acted willfully and maliciously to injure Plaintiffs.

71.     The Plaintiffs are informed and believe, and based thereon alleges, that the Debtor's willful and malicious acts alleged herein were committed to fraudulently obtain and induce Plaintiffs to fund $36,245.80 to the Debtor.

72.     The Plaintiffs are informed and believe, and based thereon allege, that the Debtor's willful and malicious acts alleged herein were committed without any legal justification or excuse.

73.     As a proximate result of the Debtor's willful and malicious conduct, Plaintiffs have

13

suffered damages and will continue to suffer damages in an amount to be determined at trial in an amount not less than $700,000.00, plus accruing interest, costs, fees, expenses, penalties and other charges attributable to Debtor's willful and malicious conduct.

74.     Accordingly, Plaintiffs are entitled to have any and all of their debt determined nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment, as follows:

As to The First Claim For Relief:

1.     That this Court determine that the Debtor's entire debt to Plaintiffs, not limited to the Plaintiffs' Damages, be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); and

2.     That Plaintiffs have judgment against Debtor in an amount to be determined at trial, plus accruing interest, costs, attorneys' fees, expenses and other charges attributable to Plaintiffs' damages.

As to The Second Claim For Relief:

3.     That this Court determine that the Debtor's entire debt to Plaintiffs, not limited to the Plaintiffs' Damages, be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(4); and

4.     That Plaintiffs have judgment against Debtor in an amount to be determined at trial, plus accruing interest, costs, attorneys' fees, expenses and other charges attributable to Plaintiffs' damages.

As to The Third Claim For Relief:

5.     That this Court determine that the Debtor's entire debt to Plaintiffs, not limited to the Plaintiffs' Damages, be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6); and

6.     That Plaintiffs have judgment against Debtor in an amount to be determined at trial, plus accruing interest, costs, attorneys' fees, expenses and other charges attributable to Plaintiffs' damages.

On All Claims For Relief:

14

1   7.  That Plaintiffs be awarded attorneys' fees and costs; and

2   8.  For such other and further relief as this Court deems proper.

3

4 Dated: July 15, 2022       **RIMON, P.C.**

5

6            By: _____

7             Jacquelyn H. Choi
            Attorneys for Plaintiffs,

8            FREE SUNSHINE APPAREL, INC. and
            MIN HEE LEE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27          15

28

# EXHIBIT "A"

David Y. Choi (State Bar No. 263917)
dchoi@goldbergsegalla.com
GOLDBERG SEGALLA LLP
777 S. Figueroa Street, Suite 1900
Los Angeles, CA 90017
Telephone: 213.415.7200
Facsimile: 213.415.7299

David H. Rho (State Bar No. 270598)
drho@crgroupllp.com
2301 E. Gladwick Street
Rancho Dominguez, California 90220
Telephone: 213.999.8475
Facsimile: 213.403.5675

Attorneys for Plaintiffs
Free Sunshine Apparel, Inc. and
Min Hee Lee

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| **FREE SUNSHINE APPAREL, INC. dba BLUE BUTTERCUP, a California Corporation; and MIN HEE LEE aka LAUREN LEE, an individual;**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**KISLON KIM aka EUNJIN KIM aka EUN JIN KIM, an individual; PSD STUDIO, INC., a California corporation; GOLD REED, a dba of unknown form; CREAM, a dba of unknown form; HIGH CALL, a dba of unknown form; GRACE KIM aka NAHM SOOK KIM, an individual; LUMIE, INC., a California corporation; BRANCHE APPAREL, INC., a California corporation; IT CLOSET, a dba of unknown form; SO YOUNG JUNG, an individual; REVEUSE, a dba of unknown form; ONYRMRK, a dba of unknown form; LUMIE & JUNNIE, a dba of unknown form; SANGHUN LEE aka SANG HUN LEE, an individual; SUNG LIGHT CLOTHING, INC., a California corporation; LA VIDA, a dba of unknown form; SUNG C. LEE, an individual; OLIVE AND LEAF, a dba of unknown form; AMERICAN FIT, a** | Case No. 19STCV45311<br><br>*Assigned for all purposes to the Hon. Rafael A. Ongkeko, Dept. 73*<br><br>**VERIFIED FIRST AMENDED COMPLAINT FOR:**<br><br>1) **Declaratory and Injunctive Relief**<br>2) **Breach of Contract**<br>3) **Breach of Uniform Commercial Code Article 2**<br>4) **Common Counts**<br>5) **Fraud and Conspiracy**<br>6) **Conversion**<br>7) **Trespass to Chattels**<br>8) **Identity Theft**<br>9) **Appropriation of Name or Likeness**<br>10) **Intentional Interference with Advantageous Business Relationships**<br>11) **Intentional Interference of Prospective Economic Advantage**<br>12) **Negligent Interference of Prospective Economic Advantage**<br>13) **Breach of Fiduciary Duty**<br>14) **Breach of the Duty of Loyalty**<br>15) **Fraudulent Transfer**<br>16) **Unethical Business Practices in Violation** |

1

**VERIFIED FIRST AMENDED COMPLAINT**

1
2
3

dba of unknown form; BNS, INC., a
California corporation; IL BIANCO, a dba
of unknown form; PHOTOJIO, a dba of
unknown form; and DOES 1 through 100,
inclusive;

Defendants.

of California Business and Professions
Code Section 17200 et seq.

**UNLIMITED JURISDICTION
DEMAND FOR JURY TRIAL**

4

5
6

Plaintiffs FREE SUNSHINE APPAREL, INC., a California corporation, and MIN HEE LEE
aka LAUREN LEE, an individual, complains and alleges as follows:

7

**PARTIES**

8
9
10
11
12
13

1.      At all times mentioned herein, Plaintiff FREE SUNSHINE APPAREL, INC.
("Plaintiff" or "FSA") is a corporation organized and existing by virtue of the laws of the state of
California and doing business as "Blue Buttercup" in the County of Los Angeles whose principal
office is located at 2842 S. Grand Ave., Los Angeles, CA 90007. FSA is a wholesale manufacturer
of women's clothing for the purposes of selling its products online at www.Fashiongo.net
("Fashiongo"), a self-proclaimed "wholesale online shopping mall".

14
15
16

2.      At all times mentioned herein, Plaintiff MIN HEE LEE aka LAUREN LEE ("Plaintiff"
or "Lauren") is an individual residing in Los Angeles County and is the Chief Executive Officer of
Plaintiff FSA.

17
18
19

3.      Upon information and belief, Defendant KISLON KIM aka EUNJIN KIM aka EUN
JIN KIM ("Kislon") is an individual residing at 1162 4th Avenue, Apt. 3, Los Angeles, CA 90019-
3459. Kislon is the daughter of Defendant GRACE KIM aka NAHM SOOK KIM.

20
21
22

4.      Upon information and belief, Defendant PSD STUDIO, INC. ("PSD") is a California
corporation doing business at 1162 4th Avenue, Apt. 3, Los Angeles, CA 90019-3459 as a broker
and/or wholesaler of women's garments and apparel manufactured in China.

23
24
25

5.      Upon information and belief, Defendant GOLD REED ("Gold Reed") is an entity of
unknown form doing business at 1458 S. San Pedro St. #L48, Los Angeles, CA 90015 as a broker
and/or wholesaler of women's garments and apparel manufactured in China.

26
27

6.      Upon information and belief, Defendant CREAM ("Cream") is an entity of unknown
form doing business at 1458 S. San Pedro St. #L48, Los Angeles, CA 90015 as a wholesale retailer

28

2
**VERIFIED FIRST AMENDED COMPLAINT**

of women's clothing.

7.      Upon information and belief, Defendant HIGH CALL ("High Call") is an entity of unknown form doing business at 1458 S. San Pedro St. #L48, Los Angeles, CA 90015 as a wholesale retailer of women's clothing.

8.      Upon information and belief, Defendant GRACE KIM aka NAHM SOOK KIM ("Grace") is an individual residing at 1162 4th Avenue, Apt. 3, Los Angeles, CA 90019-3459. Grace is the mother of Defendant Kislon.

9.      Upon information and belief, Defendant LUMIE, INC. ("Lumie") is a California corporation doing business at 810 E. Pico Blvd. #312, Los Angeles, CA 90021 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

10.      Upon information and belief, Defendant BRANCHE APPAREL, INC. ("Branche") is a California corporation doing business at 3335 E. Pico Blvd., Los Angeles, CA 90023 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

11.      Upon information and belief, IT CLOSET ("Closet") is an entity of unknown form doing business at 3335 E. Pico Blvd., Los Angeles, CA 90023 and/or 1001 Towne Ave. #113, Los Angeles, CA 90021 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

12.      Upon information and belief, Defendant SO YOUNG JUNG ("Jung") is an individual residing at 19512 Kilfinan St., Northridge, CA 91326, the principal of It Closet, Inc., a corporation dissolved on or about April 23, 2018.

13.      Upon information and belief, Defendant REVEUSE ("Reveuse") is an entity of unknown form doing business at 777 E. 10th St. #109, Los Angeles, CA 90021 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

14.      Upon information and belief, Defendant ONYRMRK ("Onyrmrk") is an entity of unknown form doing business at 3335 E. Pico Blvd., Los Angeles, CA 90023 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

15.      Upon information and belief, Defendant LUMIE & JUNNIE ("Junnie") is an entity of

unknown form doing business at 3335 E. Pico Blvd., Los Angeles, CA 90023 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

16.    Upon information and belief, Defendant SANGHUN LEE aka SANG HUN LEE ("Sang") is an individual residing at 750 Crenshaw Blvd. Apt. 302, Los Angeles, CA 90005 and is the Chief Executive Officer, Chief Financial Officer, and Secretary of Lumie and Branche.

17.    Upon information and belief, Defendant SUNG LIGHT CLOTHING, INC. ("SLC") is a California corporation doing business at 800 E. 12th St. #310, Los Angeles, CA 90021 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

18.    Upon information and belief, Defendant LA VIDA ("Vida") is an entity of unknown form doing business at 800 E. 12th St. #311, Los Angeles, CA 90021 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

19.    Upon information and belief, Defendant SUNG C. LEE ("Sung") is an individual doing business at 800 E. 12th St. #310, Los Angeles, CA 90021 and is the Chief Executive Officer, Chief Financial Officer, and Secretary of SLC.

20.    Upon information and belief, Defendant OLIVE AND LEAF ("Olive") is an entity of unknown form doing business at 3671 E. Olympic Blvd., Los Angeles, CA 90023 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

21.    Upon information and belief, Defendant AMERICAN FIT ("AF") is an entity of unknown form doing business at 1458 S. San Pedro St., Unit 207, Los Angeles, CA 90015 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

22.    Upon information and belief, Defendant BNS INC ("BNS") is a California corporation doing business at 1458 S. San Pedro St., Unit 207, Los Angeles, CA 90015 as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

23.    Upon information and belief, Defendant IL BIANCO ("Il Bianco") is an entity of unknown form doing business at 1458 S. San Pedro St. #L48, Los Angeles, CA 90015, as an online wholesale retailer of women's clothing and business competitor of Plaintiff FSA.

24.    Upon information and belief, Defendant PHOTOJIO ("Jio") is an entity of unknown

VERIFIED FIRST AMENDED COMPLAINT

form doing business at 1458 S. San Pedro St. Unit 307, Los Angeles, CA 90015 as a professional photo studio.

25.    Plaintiff is presently unaware of the true names, capacities, relationships, and extent of participation in the conduct herein alleged of the Defendants sued as DOES 1 through 100, inclusive. However, upon information and belief, Plaintiff alleges that each DOE Defendant is responsible in some manner for the actions alleged herein and is liable to the Plaintiff. Plaintiff therefore sues each DOE Defendant by a fictitious name and when each DOE Defendant's name is later ascertained, Plaintiff shall amend this Verified First Amended Complaint ("FAC") to reflect the identities of each.

26.    Upon information and belief, Plaintiff alleges that during the liability period, each of the Defendants including the fictitiously named Defendants was the agent, representative, employee, co-conspirator, aider and abettor, and/or servant of each of the remaining Defendants and was acting within the course and scope of that agency, representation, employment, service, and conspiracy in doing the acts herein alleged. Therefore, the acts of each Defendant are legally attributable to the other Defendants.

27.    Upon information and belief, Plaintiffs alleges that each of the named Defendants is and was at all times material hereto responsible in some manner for the damages sustained by the Plaintiffs as herein alleged.

## JURISDICTION AND VENUE

28.    Venue as to each Defendant is proper in this judicial district pursuant to California Code of Civil Procedure §395 because all Defendants reside in the County of Los Angeles, California and some if not all the acts alleged in this FAC occurred in the County of Los Angeles, California.

## ALTER EGO ALLEGATIONS

29.    Upon information and belief, Plaintiffs allege that there exists a unity of interest and ownership between Defendant Kislon and Defendants Gold Reed, Cream, High Call, Il Bianco, and PSD such that there was no individuality and separateness between and among Defendants.

**VERIFIED FIRST AMENDED COMPLAINT**

30.     Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Defendants Il Bianco, Gold Reed, and Cream were merely a shell and sham through which Kislon carried on her business in Gold Reed's and Cream's name, and that Il Bianco, Gold Reed, and Cream were conceived, intended, and used by Kislon as a device to avoid individual obligations and liabilities.

31.     Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Defendants PSD and High Call were merely a shell and sham through which Kislon carried on her business in PDS's and High Call's name, and that PSD and High Call were conceived, intended, and used by Kislon as a device to avoid individual obligations and liabilities.

32.     Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, other co-defendants ("Co-Defendants") in this matter as well as the DOE Defendants were merely a shell and sham through which Kislon carried on her business in Co-Defendants' and DOE Defendants' name(s), and that the Co-Defendants and DOE Defendants were conceived, intended, and used by Kislon as a device to avoid individual obligations and liabilities.

33.     Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Kislon treated and used the assets of Il Bianco, Gold Reed, Cream, High Call, PSD, Co-Defendants, and DOE Defendants as her own personal property, dominated, controlled, and operated Gold Reed, Cream, High Call, PSD, Co-Defendants, and DOE Defendants to suit her personal convenience and for the purpose of evading duties and obligations owed by Kislon to others including Plaintiffs.

34.     Upon information and belief, Plaintiffs thereupon allege that adherence to the fiction of the separate existence of Defendants Il Bianco, Gold Reed, Cream, High Call, PSD, Co-Defendants, and DOE Defendants as entities distinct from Kislon would sanction fraud and promote injustice in that Kislon has used Il Bianco, Gold Reed, Cream, High Call, PSD, and DOE Defendants as proxies to engage in the conduct alleged herein on her behalf and for her own personal enrichment with the intention and for the purposes of escaping personal liability for said conduct.

35.     Upon information and belief, Plaintiffs allege that there exists a unity of interest and

**VERIFIED FIRST AMENDED COMPLAINT**

ownership between Defendant Jung and Defendant Closet such that there was no individuality and separateness between and among Defendants.

36.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Defendant Closet was merely a shell and sham through which Jung carried on his/her business in Closet's name, and that Closet was conceived, intended, and used by Jung as a device to avoid individual obligations and liabilities.

37.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Co-Defendants and DOE Defendants were merely a shell and sham through which Jung carried on his/her business in Co-Defendants' and DOE Defendants' name(s), and that the Co-Defendants and DOE Defendants were conceived, intended, and used by Jung as a device to avoid individual obligations and liabilities.

38.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Jung treated and used the assets of Closet, Co-Defendants, and DOE Defendants as his/her own personal property, dominated, controlled, and operated Closet, Co-Defendants, and DOE Defendants to suit his/her personal convenience and for the purpose of evading duties and obligations owed by Jung to others including Plaintiffs.

39.    Upon information and belief, Plaintiffs thereupon allege that adherence to the fiction of the separate existence of Defendants Closet, Co-Defendants, and DOE Defendants as entities distinct from Jung would sanction fraud and promote injustice in that Jung has used Closet, Co-Defendants, and DOE Defendants as proxies to engage in the conduct alleged herein on his/her behalf and for his/her own personal enrichment with the intention and for the purposes of escaping personal liability for said conduct.

40.    Upon information and belief, Plaintiffs allege that there exists a unity of interest and ownership between Defendant Sang and Defendants Lumie, Branche, Reveuse, Onyrmrk, and Junnie such that there was no individuality and separateness between and among Defendants.

41.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Defendants Lumie, Branche, Reveuse, Onyrmrk, and Junnie were merely shells and shams

VERIFIED FIRST AMENDED COMPLAINT

through which Sang carried on his/her business in the name of each of these entities, and that each entity was conceived, intended, and used by Sang as a device to avoid individual obligations and liabilities.

42.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Co-Defendants and DOE Defendants were merely a shell and sham through which Sang carried on his/her business in Co-Defendants' and DOE Defendants' name(s), and that the Co-Defendants and DOE Defendants were conceived, intended, and used by Sang as a device to avoid individual obligations and liabilities.

43.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Sang treated and used the assets of Lumie, Branche, Reveuse, Onyrmrk, Junnie, Co-Defendants, and DOE Defendants as his/her own personal property, dominated, controlled, and operated these entities to suit his/her personal convenience and for the purpose of evading duties and obligations owed by Sang to others including Plaintiffs.

44.    Upon information and belief, Plaintiffs thereupon allege that adherence to the fiction of the separate existence of Defendants Lumie, Branche, Reveuse, Onyrmrk, Junnie, Co-Defendants, and DOE Defendants as entities distinct from Sang would sanction fraud and promote injustice in that Sang has used these entities as proxies to engage in the conduct alleged herein on his/her behalf and for his/her own personal enrichment with the intention and for the purposes of escaping personal liability for said conduct.

45.    Upon information and belief, Plaintiffs allege that there exists a unity of interest and ownership between Defendant Sung and Defendants SLC and Vida such that there was no individuality and separateness between and among Defendants.

46.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Defendants SLC and Vida were merely shells and shams through which Sung carried on his/her business in their name, and that these entities were conceived, intended, and used by Sung as a device to avoid individual obligations and liabilities.

47.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant

**VERIFIED FIRST AMENDED COMPLAINT**

hereto, Co-Defendants and DOE Defendants were merely a shell and sham through which Sung carried on his/her business in Co-Defendants' and DOE Defendants' name(s), and that the Co-Defendants and DOE Defendants were conceived, intended, and used by Sung as a device to avoid individual obligations and liabilities.

48.    Upon information and belief, Plaintiffs thereupon allege that at all times relevant hereto, Sung treated and used the assets of SLC, Vida, Co-Defendants, and DOE Defendants as his/her own personal property, dominated, controlled, and operated SLC, Vida, Co-Defendants, and DOE Defendants to suit his/her personal convenience and for the purpose of evading duties and obligations owed by Sung to others including Plaintiffs.

49.    Upon information and belief, Plaintiffs thereupon allege that adherence to the fiction of the separate existence of Defendants SLC, Vida, Co-Defendants, and DOE Defendants as entities distinct from Sung would sanction fraud and promote injustice in that Sung has used SLC, Vida, Co-Defendants, and DOE Defendants as proxies to engage in the conduct alleged herein on his/her behalf and for his/her own personal enrichment with the intention and for the purposes of escaping personal liability for said conduct.

## INTRODUCTORY ALLEGATIONS

50.    From on or about April 2019, Plaintiff Ms. Lauren Min Hee Lee ("Lauren") began purchasing original samples ("Original Samples"), designing, analyzing market trends, and planning the opening of a new business. Based on her expertise in design and market trends, Lauren planned the opening of her new business around her personally designed imported line, the Blue Buttercup winter 2019 collection ("Winter Line").

51.    On July 9, 2019, Lauren formed Free Sunshine Apparel, Inc. doing business as "Blue Buttercup", a California corporation, to begin business as a women's apparel designer, manufacturer, importer, and wholesaler. Lauren held the position of Chief Executive Officer, Chief Financial Officer, and Secretary of FSA.

52.    FSA formulated a marketing plan for the Winter Line including but not limited to: (1) limiting quantities of certain styles; (2) coordinating the Winter Line with specific models and

**VERIFIED FIRST AMENDED COMPLAINT**

accessories; (3) directing photoshoots including photographers, makeup, and set designers for each item of the Winter Line; (4) scheduling advertisements, upload dates, and in-house dates to maximize re-orders to generate greater profits; and (5) focus on wholesale marketing solely on Fashiongo.com ("FashionGo") to potentially form partnerships with online retailers to market Blue Buttercup apparel.

53.    Planning, researching, strategizing, and implementing the launch of the Blue Buttercup brand and especially the Winter Line, what was supposed to be Blue Buttercup's very first products, took significant investments of approximately three hundred fifty thousand dollars ($350,000) in expenses and tens of thousands of man-hours. FSA was solely responsible for all designs, ideas, marketing strategies, and Original Samples for the Winter Line.

54.    FSA and Defendants Lumie, Branche, Closet, Reveuse, Onyrmrk, Lumie & Junnie, SLC, Vida, Olive and Leaf, American Fit, BNS, and Il Bianco (collectively "Entity Parties") are business competitors. The Entity Parties all do business on the FashionGo platform and other website platforms and market to similar and overlapping customer bases. The Entity Parties consist of manufacturers and wholesalers, such as FSA and Branche, and middle vendors/wholesalers such as American Fit and La Vida, in the Los Angeles downtown apparel industry, known among Koreans as the "Jobber Market" or "Jaba" in Korean slang.

55.    Lauren is a very successful and well-known executive designer in the Jobber Market. Lauren increased the brand value, recognition, and revenue in the last three places of her employment prior to FSA, well over ten times within one year. Lauren also has more than ten years of experience with FashionGo and as executive designer, had complete access to all marketing, sales, and production information for all her products and designs, their sales, raw material costs, production costs, shipping costs, and profit margins.

56.    FSA through Lauren is very careful about designs, ideas, fabrics, and other FSA trade secrets being divulged. FSA emphasizes confidentiality to all FSA third parties as to FSA designs, fabrics, photos, and other FSA trade secrets.

57.    On or about July 10, 2020, Lauren informed Kislon, a friend of approximately four

years, of FSA's formation. In response, Defendant Kislon informed Lauren that she was qualified as an importer of manufactured women's clothing from China. Kislon further informed Lauren of her connection to manufacturers in China ("Manufacturers"). Kislon requested to Lauren for FSA to import FSA's Winter Line designs ("Imports") through her company,[1] which she said, was in the process of formation. Lauren asked Kislon if her company and the Manufacturers could produce and deliver the Imports on schedule. Kislon assured Lauren that her company and the Manufacturers would produce the FSA Imports on schedule and of the highest quality. Lauren began sending Kislon her designs, sample pictures, original samples, color schemes, fabrications, fits, production ideas, marketing ideas, and other design ideas (collectively "Designs") to Kislon solely for the purpose of manufacture of the Winter Line in China for wholesale by FSA.

58.     On or about July 24, 2019, Kislon agreed not to disclose any of FSA's Designs to any third party other than the manufacturers in China ("Manufacturers") so that they may produce the products. Based upon and relying on this promise, FSA, through Lauren, agreed to continue sending Kislon the Designs solely for the purpose of production by Manufacturers to import the manufactured women's apparel into the U.S. market, and Kislon agreed to act as a broker between FSA and the Manufacturers ("Joint Venture"). Kislon did not disclose any information in reference to any of the Manufacturers to FSA or Lauren at any time.

59.     On or about July 25, 2019, Lauren again informed Kislon not to sell, distribute, or in any way disclose to any third party any of the Imports or Designs that Lauren disclosed to Kislon for the sole purpose of manufacturing the Imports. Lauren further informed Kislon that FSA would focus solely on sales in FashionGo and that time was of the essence. Kislon agreed not to sell, distribute, or in any way disclose to any third party, except for the sole purpose of production, any of the Imports, Designs, or any other information disclosed to her in reference to the Imports, Designs, Blue Buttercup, or FSA. FSA relied on Kislon's promises not to sell, disclose, or distribute the Imports, Designs, or information relating to Blue Buttercup or FSA to any other third party and deliver the Imports on schedule and entered into the Joint Venture based on Kislon's promises.

---

[1] Upon information and belief, this company is Defendant Gold Reed.

**VERIFIED FIRST AMENDED COMPLAINT**

Lauren informed Kislon of FSA's intention to sell the Winter Line solely on FashionGo to raise awareness of the Blue Buttercup brand and for potential Winter Line reorders.

60.    On or about July 31, 2019, Kislon informed Lauren that most of the Imports would be delivered by mid-October, 2019. Kislon also informed Lauren that the rest of the Imports would be delivered by early November, 2019. Relying on Kislon's promises not to sell, distribute, or in any way disclose any of the Imports and Designs of FSA and relying on Kislon's promise that Imports would be delivered by October or early November 2019, Lauren continued to send FSA Designs to Kislon solely for the purpose of manufacture in China.

61.    On or about August 1, 2019, Kislon and FSA agreed to an approximate thirty percent (30%) deposit ("Deposit") for Imports to be paid to PSD pursuant to the instruction of Kislon. FSA further agreed to pay the remaining balance two weeks after receiving and inspecting the Imports.

62.    On or about July 24, 2019, FSA through Lauren sent Kislon the design for SKU Nos. SW1009, SW1024, SW1025, SW1040, SW1044, SW1044x, SW1052, SW80037 and T70001 and instructed Kislon on the design, body dimensions (fit), fabric, pattern, and colors for manufacture.

63.    On or about July 25, 2019, FSA through Lauren sent Kislon the design for SKU Nos. SW1010, SW1010x, SW1011, SW1011x, SW1015, SW1015x, SW1099, SW1099X, SW7000, SW80074, and KT80075 along with instructions on the design, fit, fabric, pattern, and colors for manufacture.

64.    On or about July 26, 2019, FSA through Lauren sent Kislon the design for SKU No. SW70000 along with instructions on the design, fit, fabric, pattern, and colors for manufacture.

65.    On or about July 31, 2019, Gold Reed through Kislon delivered to FSA Invoice #12, Invoice #13, and Invoice #14 in to FSA, erroneously listing the name of FSA's dba as "Blue Butter Cup" rather than "Blue Buttercup". Invoice #12 listed the following styles and quantities: SW1040x, quantity 240; SW1040, quantity 240; and SW1024, quantity 360 charging a total value of $10,524 and deposit of $2,500 which was paid by FSA with Check No. 1008. Invoice #13 listed the following styles and quantities: SW1044, quantity 1380; SW1044x, quantity 600; SW1010, quantity 360; SW1011, quantity 360; SW1015, quantity 240; SW1010x, quantity 360; SW1015x, quantity 240;

and SW1011x, quantity 360 charging a total of $48,570 and deposit of $12,186 which was paid by FSA with check Nos. 1005, 1006, and 1007. Invoice #14 listed the following styles and quantities: SW70000, quantity 720; SW70000x, quantity 240; and T70001, quantity 240 charging a total value of $14,160 and deposit of $4,248 which was paid by FSA with Check No. 1001. A true and correct copy of Invoice #12, Invoice #13, and Invoice #14 are attached hereto as **Exhibit A** to this FAC.

66.     On or about August 9, 2019, as requested by Kislon, FSA paid $4,248 to PSD with Check No. 1001.

67.     On or about August 22, 2019 as requested by Kislon, (1) FSA paid $6,093 to Gold Reed with Check No. 1005; (2) FSA paid $3,000 to Kislon with Check No. 1006; and (3) FSA paid $3,093 to Kislon with Check No. 1007.

68.     On or about August 23, 2019 as requested by Kislon, FSA paid $2,500 to Kislon with Check No. 1008.

69.     On or about August 30, 2019, Gold Reed through Kislon delivered to FSA Invoice #15 listing the following styles and quantities: SW1009, quantity 360; SW1009x, quantity 120; SW1025, quantity 360; SW1051, quantity 360; SW1051x, quantity 120; SW1052, quantity 360, SW1052x, quantity 180; and SW1053, quantity 240 charging a total value of $30,018 and deposit of $9,005.40 which was paid by FSA to Gold Reed as requested by Kislon with Check No. 1018. A true and correct copy of Invoice #15 is attached hereto as **Exhibit B** to this FAC.

70.     On or about September 9, 2019, Gold Reed through Kislon delivered to FSA Invoice #16 listing the following styles and quantities: SW80036, quantity 360; SW80037, quantity 360; SW80037x, quantity 240; SW80038, quantity 240; and SW80039, quantity 180 charging a total value of $18,492 and deposit of $5,547.60 which, after some deductions agreed upon by the parties, was paid by FSA to Gold Reed as requested by Kislon with Check No. 1045 in the amount of $3,423.60. A true and correct copy of Invoice #16 is attached hereto as **Exhibit C** to this FAC.

71.     On or about September 16, 2019, Gold Reed through Kislon delivered to FSA Invoice #19 listing the following styles and quantities: SW80074, quantity 120; SW80078, quantity 180; KT80075, quantity 360; and SW80102, quantity 360 charging a total value of $12,396 and deposit

of $3,718.80 which was paid by FSA to Gold Reed as requested by Kislon with Check No. 1047. A true and correct copy of Invoice #19 is attached hereto as **Exhibit D** to this FAC.

72.     On or about September 25, 2019, Gold Reed through Kislon delivered to FSA Invoice #20 listing the following styles and quantities: SW80074, quantity 120; SW80078, quantity 180; and SW80068, quantity 120 charging a total value of $5,502 and deposit of $1,650.60 which, after some deductions agreed upon by the parties, was paid by FSA to Gold Reed as requested by Kislon with Check No. 1057 in the amount of $1164. A true and correct copy of Invoice #20 is attached hereto as **Exhibit E** to this FAC.

73.     The total amount paid in reference to Invoice Nos. 12, 13, 14, 15, 16, 19, and 20 by FSA to Kislon, Gold Reed, and PSD was $36,245.80 characterized as a deposit ("Deposit") held by Gold Reed to begin the manufacturing and import process.

74.     From on or about August to early September, proto-samples ("Proto-Samples") based on the Designs disclosed to Kislon were received by FSA for all of the products listed above by their SKU numbers ("Products"). If a Proto-Sample was inspected and satisfactory to FSA, Lauren authorized Kislon's instruction to the Manufacturers to prepare for production of the Products immediately. FSA used the Samples to take photos and upload the photos on Fashiongo for presale with in-house dates based upon Kislon's estimated shipping dates. If a Proto-Sample was inspected and unsatisfactory, that Import was modified or cancelled.

75.     Kislon again informed Lauren that the Products would be shipped and received by mid-October, 2019 and/or early November, 2019. FSA requested, for each and every Product based on the commercial standards of typical garment importing and production, the following: (1) pre-production samples ("PP"), which, once received and inspected, would allow FSA to authorize commencement of production for each Product; and (2) top of production samples ("TOP"), which, once received and inspected, would allow FSA to authorize commencement of mass production. TOPs are the first products manufactured based on the instructions of the importer which would typically need approval before full mass production commences. In other words, once a specific product's TOP is authorized by FSA, Kislon would inform Manufacturers to commence mass

**VERIFIED FIRST AMENDED COMPLAINT**

production. In the garment industry, authorization through PPs and TOPs are absolute standards in operating procedure in order to ensure quality control and allow the importer to spot mistakes before mass production and sale of the garments. Kislon assured Lauren that the Manufacturers would send TOPs and PPs as soon as possible in order to meet the mid-October and early-November production deadlines.

76.     On or about October 1, 2019, FSA facilitated a photo shoot at the Photo District, Inc. ("District") located at 1458 S. San Pedro St., #L27, Los Angeles, CA on the advice of Kislon. To prepare for the photo shoot, FSA paid a total of $950 to various third parties including District upon instruction of Kislon and delivered certain Proto-Samples and domestic proto-samples[2] to Kislon with the following SKU numbers: KT80094, T70001, KT80253, KT80028-03, KT80252, SW1040, KT80248-01, KT80004, KP80029, KP80029-02, KT80004-01, SW80046, SW1051, SW1099, SW1053, SW80039, SW80052, KD80258-03, and SW1044. After these photos ("Photos") were prepared, Kislon delivered the Photos from District to FSA. Subsequently, the Photos were uploaded to FSA's FashionGo account for presale with in-house dates in late October and early November based on Kislon's agreements as referenced hereinabove. The Photos were strictly the property of FSA and the non-disclosure agreement of Designs between Kislon and FSA applied as to the Photos.

77.     There is a nonzero cost for FSA to develop the Original Sample, design, Proto-Sample, photoshoot, and photo editing, for upload to FashionGo. For each product, the cost ranges from five hundred dollars ($500) to three thousand dollars ($3000) depending on Original Sample costs, design difficulties, Proto-Sample production costs, photoshoot costs, and photo-editing costs. For instance, production for a single uploaded photograph on FashionGo takes hours of manpower from a designer, photographer, set director, set coordinator, make-up artist, fashion coordinator, graphic designer, model, caterer, and someone to facilitate all the moving parts.

/ / /

/ / /

/ / /

---

[2] Domestic proto-samples listed herein were not a part of any agreement between Kislon and FSA.

## **FIRST CAUSE OF ACTION**

### **Declaratory and Injunctive Relief**

### **(Against All Defendants)**

78.     The allegations set forth in paragraphs 1 through 77 above are realleged and incorporated by this reference.

79.     As alleged in detail above, Plaintiff is and at all times relevant hereto was the owner of all Imports, Products, Designs, Proto-Samples, Photos and all other design ideas associated with the Winter Line and its Imports, Products, and Samples.

80.     From on or about September 18, 2019 until October 23, 2019, Lauren and other employees at FSA requested status several times for PPs, TOPs, and estimated dates of production completion by the Manufacturers. In response to each and every request, Kislon informed FSA that TOPs and PPs were on their way, but that production had been delayed.

81.     On October 14, 2019 at 2842 S. Grand Ave., Los Angeles, CA, the warehouse location for FSA ("Warehouse"), Kislon brought certain samples of SKU No. SW80039 for inspection. Kislon informed FSA that the samples were TOPs. Lauren asked why FSA never received PPs to authorize commencement of production. Kislon provided no explanation. Some of the samples were tagged with labels of other companies including but not limited to Reveuse, Onyrmrk, and Branche. When Lauren inquired about the companies on the tags, Kislon responded that she was not aware of and never heard of the companies including Reveuse, Onyrmrk, and Branche. Kislon placed all blame on the Manufacturers for the "incorrect labels".

82.     On or about October 15, 2019, one of FSA's customers informed FSA that they received two shipments from the United Parcel Service with shipping labels ("Shipping Labels") depicting a return address as follows: "Lauren Lee; 2137603699; Blue Butter Cup; 1458 S San Pedro, Los Angeles CA 90015". At that time, FSA had not made a single shipment prior to or on that date; the name of the dba was spelled incorrectly in the exact same fashion as every single Gold Reed invoice; and the address coincides with Gold Reed, Cream, High Call, AF, BNS, Bianco, and Jio. After an investigation, FSA determined that the phone number was that of Defendant Grace.

**VERIFIED FIRST AMENDED COMPLAINT**

83.    FSA continued to request information from Kislon in reference to PPs, TOPs, and production completion dates for the Products. Kislon informed FSA of more delays and refused to provide any other information other than estimated dates of production completion in mid to late November. When Lauren again requested in-house dates for PPs and TOPs, Kislon did not provide any further information and/or dates.

84.    On or about October 23, 2019, Kislon met with Lauren at the Warehouse. Lauren inquired about the production dates for certain styles including PP and TOP dates. Kislon was still unable to provide those dates. Due to Kislon's inability to provide PPs, TOPs, dates, or any other information for certain Imports and Products, FSA cancelled the orders for the following SKU numbers: SW1040x, SW1011, SW1010, SW1044, SW1015, SW1010x, SW1015x, SW1011x, SW70000, SW70000x, T70001, SW1099 (off-white only), SW1099x, SW1025 (grey/off-white only), SW1051x, SW1052, SW1052x, SW1053 (taupe only), SW80037x, SW80038 (dusty purple only), SW80075, and SW80102 (collectively "Cancelled Styles"). Kislon agreed to the cancellation of the Cancelled Styles and return of the respective Deposit for each Cancelled Styles. FSA requested that the Deposits for Cancelled Styles be returned within a few days. At the time of cancellation, FSA was not aware of the status of the orders for the Cancelled Styles and did not authorize disclosure of the Designs and/or Imports of the Cancelled Styles at any time to any third party individual or entity.

85.    On the same day on or about October 23, 2019, Lauren met with both Kislon and Grace at the Warehouse. Lauren showed both Kislon and Grace the Shipping Labels. Both Kislon and Grace denied knowledge of the Shipping Labels. Grace admitted that the phone number on the Shipping Label was in fact her personal cellular phone number. Subsequently, Kislon admitted to Lauren that she created her own line sheets ("Line Sheets") of the Products using the Photos and delivered these Line Sheets to her own customers without FSA's or Lauren's authorization or knowledge.

86.    The following day on or about October 24, 2019 with very little notice, SKU number SW1040 was delivered to FSA. This delivery was the final delivery of any Import, Product, Proto-

Sample, PP and/or TOP from Kislon and was the only mass-produced delivery of any Product received by FSA from Kislon. To this day, FSA has not received any other production delivery or information on status of Products, cancelled or uncancelled, that were ordered in July and August of 2019. Furthermore, currently, FSA has not received any of the Deposit that was received by PSD, Kislon, and Gold Reed. Kislon refused and continues to refuse to respond to any inquiries in reference to the Products, Cancelled Styles, PPs, TOPs, or any other status updates.

87.    On or about October 25, 2019, FSA sent Kislon a Notice to Preserve Electronic Evidence. A true and correct copy of the October 25, 2019 Notice to Preserve Electronic Evidence is attached hereto as **Exhibit F** to this FAC.

88.    On or about November 27, 2019, FSA uncovered online sales of certain Imports and Products including use of Photos by Defendants High Call, Closet, Reveuse, Olive, and Vida among others. Defendants' online sales also depicted the exact same photos of an unknown origin ("Jio Photos") for the Imports and Products.

89.    Upon information and belief, Defendant Jio, as part of the conspiracy against FSA, took the Jio Photos and shared the Jio Photos with all other Defendants in this matter for the purpose of marketing and selling the Products and any copies of Products without the knowledge or authorization of FSA.

90.    On or about November 29, 2019, FSA sent a Notice to Cease and Desist and Preserve Evidence ("Notice") [3] by certified mail to the following Defendants: Kislon, PSD, Gold Reed, Cream, Grace, Lumie, Branche, Closet, Jung, Reveuse, Onyrmrk, Junnie, Sang, SLC, Vida, Sung, and Olive. Not a single Defendant responded in any way to the Notice. Moreover, since the Notice was delivered and received,[4] the Defendants listed in the Notice have increased the number of Products listed for sale in FashionGo. A true and correct copy of the Notice is attached hereto as **Exhibit G** to this FAC.

---

[3] Notice was dated November 27, 2019.

[4] Currently, delivery confirmations were received for SLC, Junnie, Branche, PSD through Kislon, Closet, Grace, Onyrmrk, Sung, and Sang.

**VERIFIED FIRST AMENDED COMPLAINT**

91.     On or about December 2, 2019, FSA reached out to an agent for Jio to investigate the matter in reference to the Jio Photos. As soon as the agent of Jio, Mr. Jae Seo,[5] found out that they were speaking to an agent of FSA, Mr. Jae Seo informed FSA that they have no information to share and that they will only respond to a "Summons".

92.     On or about December 2, 2019, FSA was served a "Complaint for Injunction and Damage" [*sic*] ("Kislon Complaint") filed by Kislon "dba Gold Reed" alleging the following causes of action: (1) Breach of Contract (UCC); (2) Violation of Implied Covenant of Good Faith and Fair Dealing; (3) Intentional Interference with Business Relationship; (4) Defamation Per Se; and (5) Intentional Infliction of Emotional Distress.[6]

93.     On or about December 8, 2019, FSA uncovered online sales of certain Imports and Products by Defendant AF. FSA also noticed that Closet, Olive, and Vida listed even more of the Products and Imports on their FashionGo site ever since the Notice was delivered.

94.     On or about December 13, 2019, FSA uncovered online sales of certain Imports and Products by Defendant Bianco.

95.     Upon information and belief, absent Kislon's Joint Venture with FSA, Defendants Kislon, PSD, Gold Reed, Cream, High Call, Grace, Lumie, Branche, Closet, Jung, Reveuse, Onyrmrk, Junnie, Sang, SLC, Vida, Sung, Olive, AF, BNS, Bianco, and DOE Defendants ("Jobber Defendants") would not have obtained and converted the Winter Line including its Imports, Products, any copies of the Products, Photos, Designs, Jio Photos, and other design ideas (collectively "FSA Property") of Plaintiff for their own benefit and profit.

96.     Upon information and belief, absent Kislon's intentional and unauthorized disclosure of FSA Property, all other Jobber Defendants would not have illegally obtained FSA Property.

97.     Upon information and belief, Kislon created a fraudulent account with the United Parcel Service ("UPS Account") amounting to identity theft of Lauren and misappropriation of

---

[5] Mr. Jae Seo described himself as a "coordinator" for Jio.

[6] *Kislon Kim v. Min Hee Lee*, Case No. 19STCV42093 filed in Los Angeles County, Stanley Mosk Courthouse.

**VERIFIED FIRST AMENDED COMPLAINT**

likeness as to Blue Buttercup (i.e. FSA's dba) without the knowledge or authority of Lauren or FSA.

98.     Upon information and belief, the UPS Account was and is still being used to send out Products, copies of Products, and other women's apparel to current FSA customers and the public at large in FSA's name solely for the profit and benefit of all Defendants in this matter causing financial damage, reputational damage, and damage to the good-will of FSA.

99.     Upon information and belief, due to the confusion and misrepresentation to FSA customers and the public caused by the UPS Account that was fraudulently created for the benefit of all Defendants, continued online sales of the Products and any copies of the Products shall irreparably harm FSA's good-will to their customers and the public at large as well as Lauren's reputation as the CEO of FSA. No monetary judgment would be sufficient to account for such irreparable harm.

100.     FSA asserts its exclusive ownership of the Products of the Winter Line, any copies of the Products, Imports, Photos, Jio Photos, Designs, and all other FSA Property; whereas Defendants, whether jointly or severally, assert their exclusive ownership of them.

101.     Accordingly, an actual controversy exists to the legal rights of FSA and Defendants as to the ownership of FSA Property.

102.     Pursuant to the California Code of Civil Procedure §§ 1060 to 1062.5, Plaintiffs seek this Court's determination that FSA owns the Imports, Products, all copies of the Products, Photos, Designs, and all other FSA Property disclosed confidentially and in confidence to Kislon in exclusion of all Defendants jointly and severally.

103.     Further, FSA seeks this Court's order of temporary, preliminary, and permanent injunction against all Defendants jointly and severally thereby enjoining Defendants from owning, using, copying, disseminating, distributing, publishing, selling, and/or having caused to be published any and all of the Imports, Products, copies of Products, Photos, Designs, and all other FSA Property.

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

**SECOND CAUSE OF ACTION**

**Breach of Contract**

**(Against Kislon, PSD, Gold Reed, High Call, Cream, and DOE Defendants)**

104.    The allegations set forth in paragraphs 1 through 103 above are realleged and incorporated by this reference.

105.    From on or about July 24, 2019 until on or about August 9, 2019, Kislon as well as PSD and Gold Reed (collectively "Kislon Defendants") entered into the Joint Venture with FSA as described hereinabove. The terms of the Joint Venture were set forth both orally and in writing in numerous conversations through email, the internet chat application known as Kakaotalk ("Kakao"), and the various invoices as attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, and **Exhibit E**.

106.    The Joint Venture between the Kislon Defendants and FSA included the following terms as enumerated orally and in writing through email and Kakao: (1) Kislon Defendants would act as a broker for import of Products from Manufacturers in China solely for the benefit of FSA; (2) Kislon Defendants would not sell, distribute, or disclose to any third party any of the Imports, Products, Samples, Designs, photos, ideas, and any other FSA Property except to Manufacturers solely for the purpose of production; (3) Kislon Defendants would provide all samples including PPs and TOPs of the Products to FSA and would not distribute or disclose PPs and TOPs to any other third party; (4) Kislon Defendants would deliver the finished Products to FSA by on or about October 15, 2019 and/or early November after inspection and approval of PPs and TOPs as customary in the garment industry; (5) FSA would provide approximately thirty percent (30%) of the invoice amount as the Deposit for Imports to commence production of the Products; and (6) FSA would provide the full balance to the Kislon Defendants pursuant to Kislon's instructions fourteen days after receiving and inspecting the Products for damages at FSA's warehouse ("Contract").

107.    On or about August 9, 2019, FSA paid PSD $4,248 as a payment in reference to the Deposit as requested by Kislon pursuant to the Contract.

108.     On or about August 22, 2019, FSA paid Gold Reed $6,093, FSA paid Kislon $3,000, and FSA paid Kislon $3,093 in three separate checks as payments in reference to the Deposit as requested by Kislon pursuant to the Contract.

109.     On or about August 23, 2019, FSA paid $2,500 to Kislon as a payment in reference to the Deposit as requested by Kislon pursuant to the Contract.

110.     On or about August 30, 2019, FSA paid $9,005.40 to Gold Reed as a Deposit payment as requested by Kislon pursuant to the Contract.

111.     On or about September 9, 2019, FSA paid $3,423.60 to Gold Reed as a Deposit payment as requested by Kislon pursuant to the Contract.

112.     On or about September 16, 2019, FSA paid $3,718.80 to Gold Reed as a Deposit payment as requested by Kislon pursuant to the Contract.

113.     On or about September 25, 2019, FSA paid $1,164 to Gold Reed as a Deposit payment as requested by Kislon pursuant to the Contract.

114.     Upon information and belief, since that time, Kislon Defendants have breached every single obligation on the Contract between FSA and the Kislon Defendants. Kislon Defendants did not provide PPs or TOPs for nearly all of the Products, Kislon Defendants disclosed FSA Property and Products to third parties by admission of Kislon through unauthorized Line Sheets, and the Kislon Defendants failed to deliver any of the Products to FSA other than SKU No. SW1040 as promised.

115.     Upon information and belief, Kislon distributed and disclosed the Imports, Products, Photos, Designs, and other FSA Property to third parties including but not limited to the other Defendants in this matter.

116.     On October 24, 2019, SKU No. SW1040 was delivered to FSA. Since that time, Kislon Defendants have not delivered any additional PPs, TOPs, or Products and have not provided any further information as to the PPs and TOPs of pending orders as well as for the Products to FSA. Kislon Defendants have not refunded any of the Deposits to FSA as well.

117.     Upon information and belief, Kislon Defendants used the Deposits for their own

**VERIFIED FIRST AMENDED COMPLAINT**

benefit without the authorization or knowledge of FSA.

118.  Upon information and belief, Kislon Defendants intended to use the Deposits to mass produce the Imports in a conspiracy with the Jobber Defendants in this action and profit from the sale of FSA Property including the Products, copies of Products, Photos, Imports, and Designs without FSA's authorization and knowledge.

119.  Upon information and belief, Gold Reed, PSD, High Call, and Cream are inadequately capitalized due to Kislon's illegal transfers of personal, financial, and other monetary assets without adequate consideration from Kislon to Il Bianco, Gold Reed, PSD, High Call, Cream, and other third parties and DOE Defendants in order to avoid payments on liabilities to FSA.

120.  Upon information and belief, Kislon illegally transferred assets of Il Bianco, Gold Reed, PSD, High Call, Cream, and DOE Defendants and continues to illegally transfer these assets with the intention to render the Kislon Defendants judgment-proof against any monetary judgment especially for the benefit of FSA after receiving the benefits of monetary consideration pursuant to the terms of the Contract.

121.  Upon information and belief, if all intentional and fraudulent acts by Kislon to render Kislon Defendants, Il Bianco, High Call, and Cream insolvent and judgment-proof as alleged herein are treated as those of any individual Kislon Defendant, High Call, or Cream any judgment for the benefit of FSA solely against any single Kislon Defendant would produce an inequitable result because FSA would be unable to recover monetary judgment against the Kislon Defendants.

122.  Upon information and belief, based on Kislon's unity of interest and ownership of PSD, Gold Reed, High Call, Cream, Il Bianco, and DOE Defendants, the separate personalities of Kislon, PSD, Gold Reed, High Call, Cream, Il Bianco, and DOE Defendants do not exist.

123.  Upon information and belief, based on Kislon's, Gold Reed's, PSD's, High Call's, Cream's, Il Bianco's, Jobber Defendants', and DOE Defendants' unity of interest and ownership, the separate personalities of each Kislon Defendant, High Call, Cream, Il Bianco, Jobber Defendants, and DOE Defendants do not exist and Kislon's fraudulent acts render Gold Reed and PSD insolvent to avoid its obligations and/or any judgment for the benefit of FSA. Therefore, Kislon, Gold Reed,

**VERIFIED FIRST AMENDED COMPLAINT**

PSD, High Call, Cream, Il Bianco, and any Jobber Defendant and/or DOE Defendant affiliated with Kislon should be liable for any judgment for Breach of Contract in this action.

124.    FSA, who had been receiving pre-orders for the Products from several online retailers, fully hoped and expected to receive the Products including the Cancelled Products, if they were ever delivered from Kislon or the Kislon Defendants. However, Kislon never responded effectively to numerous emails and requests for information from FSA as to the status of the Products, the Winter Line, etc.

125.    As of the date this FAC was drafted and based on the Breach of Contract by Kislon Defendants, the total deposits paid by FSA to the Kislon Defendants is $36,245.80. Based on the immediate interest from customers and pre-order sales of the Products including potential profits derived from such sales, FSA has been damaged at least $350,000. Based on the (1) damage to reputation based on FSA's inability to provide the Products to their customers; (2) damage to their marketing based on Defendants flooding the marketplace and Fashiongo with the Products; and (3) damage to their sales strategies and market perception due to Defendants' flagrant disregard to FSA's rights; FSA has been damaged an additional $350,000 at a minimum. The total amount of damages due to Kislon Defendants' breach of contract as of the date of the filing of this action is $700,000 at a minimum. FSA is unable to further specify the exact amount of damages due to the inability to calculate damage to FSA's good-will, marketing plan, reputation, and sales strategies due to the malicious and intentional acts of the Defendants.

### THIRD CAUSE OF ACTION

**Breach of Uniform Commercial Code Article 2**

**(Against Kislon, PSD, Gold Reed, Cream, and DOE Defendants)**

126.    The allegations set forth in paragraphs 1 through 125 above are realleged and incorporated by this reference.

127.    As referenced hereinabove, FSA paid $36,245 as a Deposit for the mass-production of the Imports and Products.

128.    In return for the Deposit paid to the Kislon Defendants, the Kislon Defendants agreed,

pursuant to the standard operating procedure in the garment import industry, to provide Proto-Samples, PPs, and TOPs for inspection and authorization.

129.    For the vast majority of the Products, PPs and TOPs were not provided.

130.    Kislon refused and/or failed to notify FSA about the PPs and TOPs for the vast majority of the Products of the Winter Line and all of the Cancelled Styles.

131.    Kislon Defendants refused and/or failed to ship the uncancelled Products of the Winter Line and refused to respond to inquiries in reference to the status of the uncancelled Products.

132.    Kislon Defendants refused and/or failed to refund any portion of the Deposits despite FSA not receiving any of the Products other than SKU no. SW1040 which FSA completely sold out.

133.    As of the date this FAC was drafted and based on the breach of the Uniform Commercial Code Article 2 ("UCC2") by Kislon Defendants, FSA has been damaged at least $350,000. Based on the (1) damage to reputation based on FSA's inability to provide the Products to their customers; (2) damage to their marketing based on Defendants flooding the marketplace and Fashiongo with the Products; and (3) damage to their sales strategies and market perception due to Defendants' flagrant disregard to FSA's rights; FSA has been damaged an additional $350,000 at a minimum. The total amount of damages due to Kislon Defendants' breach of contract as of the date of the filing of this action is $700,000 at a minimum. FSA is unable to further specify the exact amount of damages due to the inability to calculate damage to FSA's good-will, marketing plan, reputation, and sales strategies due to the malicious and intentional acts of the Defendants. As such, the total amount of damages due to Kislon Defendants' breach of UCC2 as of the date of the filing of this action is $700,000 at a minimum. FSA demands all damages and/or disgorgement of all profits of the Kislon Defendants based on their alleged breach of the UCC2.

134.    FSA has incurred and continues to incur legal expenses, costs, and attorneys' fees. FSA is at present unaware of the precise amounts of these expenses and fees which shall be determined by Motion or other acceptable court proceeding when the amounts are fully known.

/ / /

/ / /

**FOURTH CAUSE OF ACTION**

**Common Counts**

**(Against Kislon, PSD, Gold Reed, High Call, Cream, and DOE Defendants)**

135.    The allegations set forth in paragraphs 1 through 134 above are realleged and incorporated by this reference.

136.    Kislon Defendants received money in the amount of $36,245 from FSA in August and September of 2019 as a deposit ("Deposit") for the sole purpose of receiving Imports and Products. As of the date this FAC was drafted, Kislon Defendants have not delivered the Products and Imports to FSA as promised and have not returned any of the Deposit including Deposits for Cancelled Styles.

137.    FSA performed all of its obligations.

138.    Kislon, in Kislon's Complaint, admits to receiving money from Lauren.[7]

139.    Gold Reed provided an accounting through Invoice Nos. 12, 13, 14, 15, 16, 19, and 20 attached hereto as **Exhibits A** through **E**.

140.    Upon information and belief, PSD, Gold Reed, High Call, Cream, DOE Defendants, and Kislon's affiliated Co-Defendants are not adequately capitalized due to Kislon's illegal transfers of personal, financial, and other monetary assets without adequate consideration from Kislon or other Kislon Defendants in order to avoid payments on liabilities to FSA.

141.    Upon information and belief, Kislon illegally transferred Kislon Defendants', High Call's, Cream's, Il Bianco's, DOE Defendants', and affiliated  Jobber Defendants' assets and continues to illegally transfer these assets with the intention to render these entities or Kislon judgment proof against any monetary judgment especially for the benefit of Plaintiffs after receiving the benefits of money received from FSA in or about August through September, 2019.

142.    Upon information and belief, if all intentional and fraudulent acts by Kislon to render Kislon Defendants, DOE Defendants, and affiliated Jobber Defendants insolvent and judgment

---

[7] *See* ¶ 11 of Kislon's Complaint. However, Kislon's Complaint mischaracterizes the payments as made by Lauren to Kislon when they were actually made by FSA to the Kislon Defendants.

**VERIFIED FIRST AMENDED COMPLAINT**

proof as alleged herein are treated as those of Kislon or any of the Kislon Defendants alone, any judgment for the benefit of FSA solely against Kislon or any specific Kislon Defendant, DOE Defendant, or Kislon-affiliated Jobber Defendant would produce an inequitable result because FSA would be unable to recover monetary judgment against Kislon or any specific Kislon Defendant as well as Il Bianco, High Call, and Cream.

143.    Upon information and belief, based on (i) Kislon's, Kislon Defendants', Il Bianco's, High Call's, and Cream's unity of interest and ownership such that the separate personalities of any specific Kislon Defendant, Il Bianco, High Call, or Cream do not exist and (ii) Kislon's fraudulent acts rendering herself, the Kislon Defendants, DOE Defendants, and affiliated Co-Defendants insolvent to avoid their obligations and/or judgment for the benefit of FSA; Kislon, the Kislon Defendants, DOE Defendants, and affiliated Jobber Defendants should be liable for any judgment for Common Counts in this action.

144.    As of the date of the filing of this action, Kislon Defendants received $36,245 as a Deposit solely for the purpose of manufacture and delivery of Winter Line Products to FSA for wholesale. The Deposit was not used for the benefit of FSA and FSA has not received any of the Deposit owed for Cancelled Styles.

145.    As of the date of the filing of this action, the minimum estimated damages to FSA based upon Kislon Defendants' acts as alleged herein is $700,000.

146.    FSA has incurred and continues to incur legal expenses, costs, and attorneys' fees. FSA is at present unaware of the precise amounts of these expenses and fees which shall be determined by Motion or other acceptable court proceeding when the amounts are fully known.

### FIFTH CAUSE OF ACTION

### Fraud and Conspiracy

### (Against All Defendants and DOE Defendants)

147.    The allegations set forth in paragraphs 1 through 146 above are realleged and incorporated by this reference.

148.    On or about September 6, 2019, Kislon requested FSA's United States Federal Trade

**VERIFIED FIRST AMENDED COMPLAINT**

Commission Registered Identification Number ("RN Number") to allow the import of the Winter Line Products from the Manufacturers represented by Kislon to be located in China. Lauren gave Kislon FSA's RN Number of "160200" to allow importation from overseas of the Winter Line for the sole purpose of sale by FSA.

149.    Upon information and belief, Kislon and the Kislon Defendants conspired with Cream, High Call, Grace, Lumie, Branche, Closet, Jung, Reveuse, Onyrmrk, Junnie, Sang, SLC, Vida, Olive, AF, BNS, Bianco, and Jio to deceive FSA to deliver Deposits from FSA to manufacture the Imports of FSA for their own use and sale.

150.    Upon information and belief, Kislon and the Jobber Defendants knew of Lauren's success and profitability of Lauren's designs and conspired with each other to convert the Deposits, Imports, Products, Designs, and all other FSA Property for their own use, benefit, and profit. The Jobber Defendants were able to upload the Products to FashionGo with in-house dates on the same day as or prior to any dates that Kislon had previously informed FSA and Lauren.

151.    Upon information and belief, the Jobber Defendants could not legally import any products including the Winter Line Products because they did not have their own RN Number. As such, the Jobber Defendants needed FSA's RN Number and requested FSA's RN Number in furtherance of their fraudulent scheme to sell Blue Buttercup Products for their own benefit and profit utilizing, without FSA's authorization or knowledge, the resources and identity of FSA.

152.    On or about July 25, 2019, Kislon willfully and falsely represented to FSA the following: (1) Kislon Defendants would act as a broker for import of Products from Manufacturers in China solely for the benefit of FSA; (2) Kislon Defendants would not sell, distribute, or disclose to any third party any of the Imports, Products, Samples, Designs, Photos, ideas, and any other FSA Property except to Manufacturers solely for the purpose of production; (3) Kislon Defendants would provide all samples including PPs and TOPs of the Products to FSA and would not distribute or disclose to any other third party; (4) Kislon Defendants would deliver the finished Products to FSA by on or about October 15, 2019 and/or early November after inspection and approval of PPs and TOPs as customary in the garment industry; (5) FSA would provide the Deposit for Imports to

**VERIFIED FIRST AMENDED COMPLAINT**

commence production of the Products; and (6) FSA would provide the full balance to the Kislon Defendants pursuant to Kislon's instructions fourteen days after receiving and inspecting the Products for damage at FSA's warehouse.

153.    Upon information and belief, all other Defendants aided, abetted, and colluded with the Kislon Defendants to make material misrepresentations to FSA for the purpose of their own benefit, profit, and to sabotage the business and reputation of FSA.

154.    Upon information and belief, all Defendants schemed to take advantage of FSA as a start-up company by fraudulently inducing FSA to work with the Kislon Defendants and Manufacturers in order to extract both money from FSA through Deposits and the Products themselves by agreeing to non-disclosure of Imports, Products, Designs, and other FSA Property to any third parties. Upon information and belief, at the time of the agreement, Kislon and the Kislon Defendants never intended to (1) provide all deliveries as promised; (2) abide by the non-disclosure of Imports, Products, Designs, and other FSA Property; and (3) return the Deposits for any reason whatsoever.

155.    Upon information and belief, at the time Kislon agreed to the Contract, Kislon and the other Jobber Defendants planned to import Blue Buttercup's Winter Line Products using FSA's RN Number, receive the Winter Line Products prior to (or instead of) FSA, and ultimately sell the Winter Line on their own FashionGo websites with in-house dates prior to any delivery or receipt of Products by FSA in order to dilute the market for their own benefit and to the detriment of FSA.

156.    However, FSA relied on the representations of Kislon in reference to the Kislon Defendants and paid all Deposits as requested by Kislon. FSA uploaded the Winter Line Products for presale on FashionGo with in-house dates based on the dates Kislon gave for completed delivery of Products. FSA received approximately one hundred thousand dollars ($100,000) in orders from online retailers on FashionGo until FSA removed the Products listed due to Kislon's non-response and non-delivery of Products. Not including probable reorders and special orders of the Winter Line Products, FSA expected gross revenue of the Products to be approximately $500,000. Instead, FSA cancelled all pending orders from FashionGo due to Jobber Defendants' conversion of Winter Line

Products except for SW1040 which FSA sold out.

157. Upon information and belief, as soon as Kislon received the Import orders and Designs from FSA, Kislon began working with the Defendants in this matter to prepare, without the knowledge or authorization of FSA, to sell the Products prior to the delivery dates promised by Kislon to FSA.

158. Upon information and belief, Defendants ordered as much of the Imports and Products from the Manufacturers as possible, funded at least in part by the Deposit, including illegal copies of the Products breaching the non-disclosure agreement with FSA and infringing on FSA's copyright protections for the benefit and profit of all Defendants in this matter.

159. Upon information and belief, the Kislon Defendants and/or Grace created the fraudulent UPS Account amounting to identity theft of Lauren and misappropriation of likeness as to Blue Buttercup (i.e. FSA's dba) without the knowledge or authority of Lauren nor FSA.

160. Upon information and belief, the UPS Account was and is still being used to send out Products, copies of Products, and other women's apparel products in FSA's name solely for the profit and benefit of all Defendants in this matter.

161. Upon information and belief, the Defendants in this matter worked with the Manufacturers to create and attach their own labels to the Products and copies of the Products in order to sell them on Fashiongo and in other online and off-line mediums.

162. Upon information and belief, Defendants in this matter fraudulently and maliciously flooded the market with the Products and/or copies of Products prior to manufacture and delivery of the Products to FSA in order to increase their business and sabotage the business and reputation of FSA.

163. Upon information and belief, Kislon purposely delayed and/or did not disclose her receipt of PPs and TOPs of the Products to FSA and instead, delivered the PPs and TOPs to the other Defendants in this matter; moreover, the Defendants used Original Samples previously disclosed to Kislon by FSA for the sole purpose of manufacture as well as Proto-Samples, PPs, TOPs, and all other FSA Property without authorization or knowledge of FSA for their own use and

for marketing purposes including but not limited to the Photos and Jio Photos.

164.    In or about November 2019, FSA began uncovering sales from Jobber Defendants including but not limited to La Vida, Olive and Leaf, Branche, Lumie, It Closet, American Fit, and Il Bianco. In response, FSA made several purchases of many of the Products from the Jobber Defendants. FSA's RN Number was attached to every single article sold by the Jobber Defendants received by FSA – approximately thirty articles of clothing in total. FSA never authorized any Defendants or any third party whatsoever to use its RN Number in any way.

165.    Upon information and belief, the Jobber Defendants including the Kislon Defendants continue to import Products and potentially their own imports using FSA's RN Number.

166.    On July 7, 2020 after uncovering sales by Defendants Il Bianco and It Closet, FSA sent a demand to cease and desist ("Demand") to all parties.

167.    In response, Defendants immediately removed the Photos and rather than removing the offending Products, changed their SKU numbers and continued to market and list the Winter Line Products on Fashiongo at least as of July 7, 2020.

168.    Upon information and belief, Defendants are still continuing to ship the Products with the fraudulent UPS Account and fraudulent RN Number in order to increase their business and sabotage the business of FSA.

169.    Upon information and belief, Defendants fraudulently, maliciously, and without the knowledge or authorization of FSA, conspired to act as agents of Blue Buttercup in order to damage the Blue Buttercup name-brand and likeness for the benefit and financial gain of the Defendants in this matter and the detriment of FSA.

170.    Upon information and belief, currently, all Defendants continue to pursue the conspiracy and fraud to sell the Products even after they received the Notice or any other notice from any agent of FSA for their own financial gain.

171.    As of the date of the filing of this action, not a single Defendant in this matter reached out to FSA in reference to the issues enumerated in the Notice or the Demand. Instead, most if not all Defendants have engaged in a design of obstruction through a joint defense by a single attorney.

**VERIFIED FIRST AMENDED COMPLAINT**

Pursuant to the Notice, Defendants had a duty to preserve all evidence; however, other than Kislon, Defendants have failed to produce a single document in response to formal discovery.

172.    Defendants have and continue to engage in a conspiracy against Plaintiffs for their own benefit and financial gain based upon (1) the non-response of Defendants as to the Notice, Demand, or any other communication in reference to the issues in the Notice or Demand; (2) the non-response of Kislon as to status in reference to PPs, TOPs, and Products; (3) continued legal cooperation through representation of most if not all Defendants by a single attorney up to and as of the drafting of this FAC; (4) Defendants' obstruction as to Plaintiffs' attempts to gather evidence through formal discovery up to and as of the drafting of this FAC; and (5) online sales by Jobber Defendants of the Products at least until July 7, 2020.

173.    Based upon and due to Defendants' conspiracy to commit willful, wanton, and malicious acts of fraud against FSA for their benefit and financial gain, FSA incurred the following damages including but not limited to (1) damage to reputation based on FSA's inability to provide the Products to their customers, (2) damage to their marketing based on Defendants flooding the marketplace and FashionGo with the Products; (3) damage to their sales strategies and market perception due to Defendants' flagrant disregard to FSA's rights; (4) damage to FSA's goodwill through use of Blue Buttercup's identity (e.g. UPS Account) (5) potential tax or import fee liability through use of Blue Buttercup's identity through FSA's RN Number; and (6) financial damage due to FSA's inability to sell the Products and based upon all expenses for raw materials, marketing, advertising, and all other costs associated with Designs and pre-production of the Winter Line. FSA has been harmed at least $700,000 based upon amount of potential sales revenue lost, damage to future business, and damage to its reputation. FSA has been harmed approximately an additional $350,000 due to costs and expenses associated with design and pre-production. Upon information and belief, due to the continued unauthorized, fraudulent, and malicious sales of the Products, FSA's damages and expenses continue to accrue. Upon information and belief, due to the continued unauthorized, fraudulent, and malicious use of the Blue Buttercup identity and FSA's RN Number, FSA damages and expenses further continue to accrue. Plaintiff is at present unaware of the precise

amount of damages based on the Defendants' fraud and conspiracy and shall inform the Court when the amounts are fully ascertained after discovery. FSA is unable to further specify the exact amount of damages due to the inability to calculate damage to FSA's good-will, marketing plan, and sales strategies due to the malicious and intentional acts of the Defendants. Plaintiff is further entitled to have and recover punitive and exemplary damages according to proof at the time of trial.

## <u>SIXTH CAUSE OF ACTION</u>

### Conversion

### (Against All Defendants and DOE Defendants)

174.    The allegations set forth in paragraphs 1 through 173 above are realleged and incorporated by this reference.

175.    Upon information and belief, all Defendants and DOE Defendants in this action wrongfully possess and/or exercise control over the Products, copies of Products, Imports, Designs, Photo, and any other FSA Property as defined hereinabove.

176.    FSA has paid all Deposits pursuant to the Contract for the sole purpose of receiving the Products from the Manufacturers.

177.    Upon information and belief, Defendants knowingly and intentionally took possession of the Products without the knowledge or authorization of FSA, continue to have possession of the Products and copies of products, continue to prevent FSA from having access to the Products, and refuse to deliver the Products which are the property of FSA.

178.    FSA never consented to allowing any of the Products, copies of Products, Imports, Designs, Photo, Line Sheets, or any other FSA Property to be disclosed or transferred to any person other than the Manufacturers for the sole purpose of manufacturing the Products for the benefit of FSA as agreed to by Kislon in the Contract.

179.    Defendants knew or should have known that special injury or harm would result from the conversion of the Products including damage to FSA's present and future business and damage to FSA's reputation.

180.    Based upon and due to Defendants' conversion, FSA has been harmed at least

$700,000 as of the date of the filing of this action based upon amount of potential sales revenue lost, damage to future business, and damage to its reputation. Due to the continued unauthorized, fraudulent, and malicious sales of the Products and any copies of Products, FSA's damages and expenses continue to accrue. Plaintiff is at present unaware of the precise amount of damages based on Defendants' conversion of the Products and shall inform the Court when the amounts are fully ascertained after discovery. Plaintiff is further entitled to have and recover punitive and exemplary damages according to proof at the time of trial.

## SEVENTH CAUSE OF ACTION

### Trespass to Chattels

### (Against All Defendants and DOE Defendants)

181.    The allegations set forth in paragraphs 1 through 180 above are realleged and incorporated by this reference.

182.    Upon information and belief, all Defendants and DOE Defendants in this action wrongfully trespassed on the personal property of FSA, namely the Products, copies of Products, Imports, Designs, Photos, and any other FSA Property as defined hereinabove.

183.    FSA owns and has a right to possess the FSA Property including but not limited to the Products and any copies of Products based on the agreement and Deposits paid by FSA to the Kislon Defendants.

184.    Upon information and belief, all Defendants and DOE Defendants interfered with FSA's use or possession of the Products and FSA Property by converting the Products, copies of Products, Imports, Designs, Photo, Line Sheets, etc. to market, list, and derive profits therefrom.

185.    FSA did not consent to Defendants' possession of the Products, copies of Products, Imports, Designs, Photo, Line Sheets, and other FSA Property.

186.    Defendants knew or should have known that special injury or harm would result from the illegal possession of the Products and/or copies of Products by Defendants including damage to FSA's present and future business and damage to FSA's reputation and marketing strategies.

187.    Based upon and due to Defendants' trespass to chattels of FSA, FSA has been harmed

at least $700,000 as of the date of the filing of this action based upon potential sales revenue lost, damage to future business, and damage to its reputation. Due to the continued unauthorized, fraudulent, and malicious sales of the Products and/or copies of Products by the Defendants, FSA's damages and expenses continue to accrue. Plaintiff is at present unaware of the precise amount of damages based on Defendants' trespass to Plaintiff's chattels and shall inform the Court when the amounts are fully ascertained after discovery. Plaintiff is further entitled to have and recover punitive and exemplary damages according to proof at the time of trial.

## EIGHTH CAUSE OF ACTION

### Identity Theft

### (Against All Defendants and DOE Defendants)

188.    The allegations set forth in paragraphs 1 through 187 above are realleged and incorporated by this reference.

189.    On or about September 6, 2019, Kislon requested FSA's RN Number to allow the Products to be imported and FSA through Lauren gave Kislon FSA's RN Number solely for the purpose of importing the Winter Line Products for wholesale by FSA.

190.    FSA's RN Number was used to import the Winter Line for sale by the Jobber Defendants without the knowledge or authorization of Plaintiffs.

191.    On or about October 15, 2019, FSA was informed of a UPS Shipping Label depicting the name "Lauren Lee", the CEO, CFO, and Secretary of FSA as well as "Blue Butter Cup", a misspelled name of FSA's dba for its clothing line which is identical with the misspelled name listed on all invoices created by Kislon.

192.    The Shipping Label also depicted the address of Gold Reed, Cream, High Call, AF, BNS, and Bianco *sans* the unit number. Defendant Grace also admitted that the phone number on the Shipping Label was her own direct phone number.

193.    FSA never authorized the use or dissemination of Blue Buttercup, all of its derivations, or the name of its CEO, Lauren Lee, to any person or entity.

194.    FSA never authorized the use or dissemination of Blue Buttercup, all of its

derivations, or the name of its CEO to Kislon or Grace.

195.    On or about October 24, 2019, Lauren informed both Kislon and Grace about the Shipping Label and informed them that a police report would be filed. Kislon and Grace also informed Lauren that they would be filing a police report as well due to unauthorized use of Grace's phone number.

196.    On or about October 25, 2019, without making an outright admission, Kislon informed Lauren through Kakao that the Shipping Label issue was immaterial and did not amount to any crime.

197.    Pursuant to California Penal Code § 530.5 et seq., identity theft is the unauthorized use of "personal identifying information to obtain credit, goods, services, or medical information in the name of another person. Every person who willfully obtains personal identifying information…of another person without the authorization of that person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, or medical information in the name of the other person without the consent of that person is guilty of a public offense, and upon conviction therefore, shall be punished…"

198.    Upon information and belief, Defendants used the name "Lauren Lee", "Blue Butter Cup", and "Blue Bottle Cup" for the purpose of shipping unauthorized products including the Products, copies of Products, and other women's apparel to FSA customers and the public at large and profited from the shipments.

199.    Upon information and belief, when the FSA customers are charged for receipt of the unauthorized products which they may not have even ordered but which they were fraudulently charged, the customers can only assume, based on the fraudulent Shipping Labels, that the unauthorized shipments came from FSA thus damaging FSA's reputation.

200.    Upon information and belief, Defendants continue to use the unauthorized UPS Account to send products in the name of "Lauren Lee" and "Blue Butter Cup" in order to charge FSA customers' accounts without their authorization and damage the reputation of Blue Buttercup (i.e. FSA).

**VERIFIED FIRST AMENDED COMPLAINT**

201.    On or about October 24, 2019, Lauren filed a police report ("Police Report") with the Los Angeles Police Department. A true and correct copy of the Police Report is attached hereto as **Exhibit H** to this FAC.

202.    Upon information and belief, neither Kislon nor Grace filed any police report based on the alleged "unauthorized use" of Grace's phone number as Kislon and Grace had previously promised.

203.    Based upon and due to Defendants' identity theft for the benefit and profit of themselves, FSA has been harmed at least $700,000 as of the date of the filing of this action based upon potential losses due to FSA clients' asking for refunds of unauthorized deliveries, potential sales revenue lost, damage to future business, tax and import liabilities, and damage to its reputation. Currently, the full extent of damages is unknown and shall be ascertained after discovery is completed.

204.    Upon information and belief, due to the continued unauthorized, fraudulent, and malicious use of Lauren Lee's identity and FSA's mistaken identity of, "Blue Butter Cup", FSA's damages and expenses continue to accrue. Plaintiff is at present unaware of the precise amount of damages based on Defendants' identity theft and shall inform the Court when the amounts are fully ascertained after discovery. Plaintiff is further entitled to have and recover punitive and exemplary damages according to proof at the time of trial.

**<u>NINTH CAUSE OF ACTION</u>**

**Appropriation of Name of Likeness**

**(Against All Defendants and DOE Defendants)**

205.    The allegations set forth in paragraphs 1 through 204 above are realleged and incorporated by this reference.

206.    Upon information and belief, Defendants used Lauren Lee's, FSA's, and Blue Buttercup's name, likeness, and identity for their own benefit for an unlawful use.

207.    Neither Lauren nor FSA authorized the use of their names to any person for any reason.

208.    Upon information and belief, Defendants gained a commercial benefit by misrepresenting themselves as "Lauren Lee", "Blue Bottle Cup" and "Blue Butter Cup" on their Shipping Labels through the UPS Account.

209.    Based upon and due to Defendants' appropriation of the names and likenesses for FSA and Lauren Lee for the profit, financial gain, and benefit of themselves, FSA has been harmed at least $700,000 as of the date of the filing of this action based upon potential losses due to FSA clients' asking for refunds of unauthorized deliveries, potential sales revenue lost, damage to future business, and damage to its reputation. Currently, the full extent of damages are unknown and shall be ascertained after discovery is completed.

210.    Upon information and belief, due to the continued unauthorized, fraudulent, and malicious appropriation of Lauren Lee's identity and the identity of FSA and FSA's dba, "Blue Buttercup", FSA's damages and expenses continue to accrue. Plaintiff is at present unaware of the precise amount of damages based on Defendants' appropriation of likeness and shall inform the Court when the amounts are fully ascertained after discovery. Plaintiff is further entitled to have and recover punitive and exemplary damages according to proof at the time of trial.

## **TENTH CAUSE OF ACTION**

### **Intentional Interference with Advantageous Business Relationships**

### **(Against All Defendants and DOE Defendants)**

211.    The allegations set forth in paragraphs 1 through 210 above are realleged and incorporated by this reference.

212.    At all times relevant hereto, FSA had economic relationships with existing customers and retailers who were ready, willing, and able to do business with FSA through FashionGo which would have resulted in the continuation of economic benefits for FSA and the retailer through marketing corroboration.

213.    Defendants knew or should have known about these relationships.

214.    Defendants acted intentionally to disrupt the relationships between FSA and its customers by doing the things, including but not limited to intentionally and maliciously selling the

**VERIFIED FIRST AMENDED COMPLAINT**

Winter Line Products and intentionally using FSA's and Blue Buttercup's identity for their own financial gain as alleged hereinabove causing FSA to be unable to ship their Winter Line Products to their retailers as promised based on preorder sales. Further, Defendants themselves converted the Products to dilute the marketing and advertising of Winter Line Products by promoting and selling the Products on their own FashionGo site.

215.    As a direct and proximate result of Defendants' intentional acts that disrupted FSA's continuing and advantageous business relationships with its customers, FSA has suffered actual and consequential damages including the loss of business, business opportunities, revenue, goodwill, reputation, and profits. FSA will continue to suffer similar losses after the filing of this FAC in an amount to be proved at trial exceeding $700,000.

216.    Defendants' conduct described above constitutes fraud, oppression, and malice within the meaning of California Civil Code § 3294 and thus, justifies the awarding of exemplary and punitive damages.

## ELEVENTH CAUSE OF ACTION

### Intentional Interference of Prospective Economic Advantage

### (Against All Defendants and DOE Defendants)

217.    The allegations set forth in paragraphs 1 through 216 above are realleged and incorporated by this reference.

218.    At all relevant times hereto, FSA had various economic relationships with prospective customers who were ready, willing, and able to do business with FSA which would have resulted in economic benefits.

219.    Defendants knew or should have known about these prospective relationships.

220.    Defendants acted intentionally to disrupt the relationships between FSA and its prospective customers by doing the things alleged hereinabove.

221.    As a direct and proximate result of Defendants' intentional acts that disrupted FSA's continuing and prospective economic relationships with its customers, FSA has suffered actual and consequential damages including the loss of business, business opportunities, revenue, good will,

and profits. FSA will continue to suffer similar losses after the filing of this FAC in an amount to be proved at trial exceeding $700,000.

222.    Defendants' conduct described above constitutes fraud, oppression, and malice within the meaning of California Civil Code § 3294 and thus, justifies the awarding of exemplary and punitive damages.

## TWELFTH CAUSE OF ACTION

### Negligent Interference of Prospective Economic Advantage

### (Against All Defendants and DOE Defendants)

223.    The allegations set forth in paragraphs 1 through 222 above are realleged and incorporated by this reference.

224.    At all relevant times hereto, FSA had economic relationships with prospective customers who were ready, willing, and able to do business with FSA which would have resulted in economic benefits.

225.    Defendants knew or should have known about these relationships and prospective relationships at all relevant times.

226.    Defendants owed FSA a duty of care and were aware that if they did not act with due care as to use of FSA's RN Number, identity, and/or dba, their actions would interfere with FSA's relationships and cause FSA to lose in whole or in part the probable future economic benefits or advantage of prospective relationships.

227.    Defendants acted negligently to disrupt the relationships between FSA and its prospective customers by doing the things alleged hereinabove.

228.    As a direct and legal result of Defendants' negligent acts disrupting FSA's continuing and prospective economic relationships with its customers, FSA has suffered actual and consequential damages including the loss of business, business opportunities, revenue, good will, reputation, and profits. FSA will continue to suffer similar losses after the filing of this FAC in an amount to be proved at trial exceeding $700,000.

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

## **THIRTEENTH CAUSE OF ACTION**

### **Breach of Fiduciary Duty**

### **(Against Kislon Kim, Gold Reed, and PSD)**

229.    The allegations set forth in paragraphs 1 through 228 above are realleged and incorporated by this reference.

230.    From on or about July 25, 2019 until the present time, Kislon Defendants owed a fiduciary duty to FSA as a broker between FSA and the Manufacturers.

231.    Upon information and belief, FSA alleges that the Kislon Defendants failed to act as a reasonably careful fiduciary based on the acts as described hereinabove.

232.    Upon information and belief, FSA alleges that the Kislon willfully concealed material facts and intended to defraud FSA as alleged hereinabove.

233.    The conduct of the Kislon Defendants was in direct contravention to the best interest of FSA.

234.    As a proximate result of the Kislon Defendants' breach of fiduciary duty against FSA, FSA was harmed financially in the amount of at least $700,000. Due to the continued unauthorized sales and possession of the Products and copies of Products, FSA's costs and damages continue to accrue.

235.    Kislon's conduct was a substantial factor in causing financial harm to FSA. FSA would not have been financially harmed had Kislon acted with the utmost good faith and in the best interest of FSA.

236.    FSA has incurred and continues to incur legal expenses, costs, damages, and attorneys' fees. FSA has been damaged at least $700,000; however, at present, FSA is unaware of the precise amounts of the damages and fees and shall inform the Court when the amounts are fully known.

237.    Kislon Defendants' conduct described above constitutes fraud, oppression, and malice within the meaning of California Civil Code § 3294 and thus, justifies the awarding of exemplary and punitive damages.

## FOURTEENTH CAUSE OF ACTION

### Breach of the Duty of Loyalty

### (Against Kislon Kim, Gold Reed, and PSD)

238.    The allegations set forth in paragraphs 1 through 237 above are realleged and incorporated by this reference.

239.    From on or about July 25, 2019 until the present time, Kislon Defendants owed a duty of loyalty to FSA as a broker between FSA and the Manufacturers. That duty included the requirement that Kislon would keep the Imports, Designs, and all other FSA Property secret from all third parties except the Manufacturers for the sole purpose of manufacturing the Products.

240.    Upon information and belief, Kislon Defendants violated their duty by engaging in the acts alleged hereinabove.

241.    Upon information and belief, Kislon exploited the trust placed in them by FSA by engaging in the acts alleged above.

242.    Upon information and belief, the conduct engaged by Kislon was willful, fraudulent, unlawful constituting a violation of the common law duty of loyalty, and undertaken with knowledge of its illegality. Moreover, the conduct was a substantial factor in causing financial harm to FSA. FSA would not have been financially harmed had the Kislon Defendants acted with the utmost good faith and in the best interest of FSA.

243.    As a proximate result of the Kislon Defendants' breach of the duty of loyalty against FSA, FSA was harmed financially in the amount of at least $700,000. Due to the continued unauthorized sales and possession of the Products and copies of Products, FSA's costs and damages continue to accrue and FSA is unaware of the precise amounts of the damages and fees which shall be ascertained in discovery.

244.    Kislon Defendants' conduct described above constitutes fraud, oppression, and malice within the meaning of California Civil Code § 3294 and thus, justifies the awarding of exemplary and punitive damages.

/ / /

## **FIFTEENTH CAUSE OF ACTION**

### **Fraudulent Transfer**

### **(Against All Defendants and DOE Defendants)**

245.     The allegations set forth in paragraphs 1 through 244 above are realleged and incorporated by this reference.

246.     Upon information and belief, Kislon, Grace, Jung, Sang, and Sung (collectively "Individual Defendants") transferred financial and other property assets of each other and their respective entities to themselves and DOE Defendants with an actual intent to hinder, delay, or defraud creditors including FSA in the collection of its damages as alleged hereinabove.

247.     Upon information and belief, the Individual Defendants transferred assets of their respective entities to themselves and DOE Defendants without obtaining reasonably equivalent value in exchange thereof.

248.     Upon information and belief, the Individual Defendants intended to transfer these assets in order to commit the fraudulent acts set forth above against FSA and other creditors thereby becoming subject to liability for the damages incurred and rendering the respective entities judgment proof against any obligation or monetary judgment for the benefit of FSA and any third party creditors.

249.     Upon information and belief, the Individual Defendants, Co-Defendants, and DOE Defendants accepted the fraudulent transfer of assets with the intention of hindering, delaying, or defrauding the collection attempts of FSA's aforementioned damages thereby incurring liability for the damages alleged herein. The Individual Defendants, Co-Defendants, and DOE Defendants were fully aware of the fraudulent nature of the transfers which they received without delivering reasonably equivalent value or any value whatsoever.

250.     As a proximate result of the fraudulent transfers as alleged herein, FSA has been harmed at least $700,000. FSA at present is unaware of the full extent of damages due to the alleged fraudulent transfers and will notify the Court when the amounts are fully known. FSA is further entitled to set aside and void the transfer of assets and to recover punitive and exemplary damages

according to proof.

## **SIXTEENTH CAUSE OF ACTION**

**Unfair Business Practices in Violation of Business & Professions Code § 17200 et seq.**

**(Against All Defendants and DOE Defendants)**

251.    The allegations set forth in paragraphs 1 through 250 above are realleged and incorporated by this reference.

252.    California's Unfair Competition Law, Business and Professions Code § 17200 et seq. ("UCL") prohibits acts of unfair competition defined as "any unlawful, unfair, or fraudulent business act or practice" is prohibited in the state of California.

253.    The alleged acts described hereinabove constitute acts of unfair competition within the meaning of the UCL.

254.    As a direct and proximate result of the unfair competition alleged above, FSA has suffered direct monetary losses sufficient to establish standing as required by Bus. & Prof. Code § 17205. Such monetary losses include but are not limited to lost revenue from the diversion of sales and loss of value in FSA's business.

255.    As a result of the foregoing violations of the UCL, Defendants, jointly and severally, are obligated to provide restitution to FSA in an amount subject to proof at trial. Plaintiff estimates such restitution in an amount of at least $700,000.

256.    Further, FSA is entitled to an injunction enjoining and restraining Defendants from their continued violations of the UCL pursuant to Bus. & Prof. Code § 17203.

257.    In addition, FSA requests the imposition of a civil penalty for each Defendant under Bus. & Prof. Code §§ 17206, 17206.1 and 17207.

258.    Defendants' conduct described above constitutes fraud, oppression, and malice within the meaning California Civil Code § 3294; thus, the awarding of exemplary and punitive damages is warranted.

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

1

## PRAYER FOR RELIEF

2    WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

3    1.    For declaratory and injunctive relief according to proof;

4    2.    For general and special damages according to proof;

5    3.    For disgorgement of all profits;

6    4.    For punitive and exemplary damages according to proof;

7    5.    For pre-judgment and post-judgment interest on all damages awarded;

8    6.    For reasonable attorneys' fees;

9    7.    For costs of suit incurred;

10    8.    For such other and further relief as the Court deems just and proper.

11

12    DATED: July 22, 2020

13                                CR GROUP LLP

14
                                By: _____
15                                 David H. Rho
                                   Counsel for Plaintiff Free Sunshine Apparel and
16                                 Lauren Lee

17

18                                GOLDBERG SEGALLA LLP

19
                                By: _____
20                                 David Y. Choi
                                   Counsel for Plaintiff
21                                 Free Sunshine Apparel, Inc.

22

23

24

25

26

27

28

45

**VERIFICATION**
**California Code of Civil Procedure § 446**

FREE SUNSHINE APPAREL, INC. vs. KISLON KIM, et al.

I, Min Hee Lee (Lauren Lee), state and declare as follows:

I am an individual Plaintiff and the CEO, CFO, and Secretary of Plaintiff FREE SUNSHINE APPAREL, INC. in the above-entitled matter.

I have read the foregoing Verified First Amended Complaint and know the contents thereof.

The same is true of my own knowledge except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

Executed on July 22, 2019 at Los Angeles County, California.

I declare and certify, under penalty of perjury, that the foregoing is true and correct.

_____
Ms. Min Hee Lee, as an individual

_____
Ms. Min Hee Lee, as CEO of Plaintiff Free
Sunshine Apparel, Inc.

46
**VERIFIED FIRST AMENDED COMPLAINT**

EXHIBIT A

EXHIBIT A

# Gold Reed

# INVOICE

### INVOICE# 14

Address: **1458 S SAN PEDRO #L48**
**Los Angeles, CA 90015**

Phone: **818-321-7577**

BILL To:     Blue Butter Cup
2842 S GRAND AVE
LOS ANGELES, CA 90007

**INVOICE DATE:** 7/31/2019

| PO Number | Ship Date | | Term | | | Ship Via | | Rep | | Carton |
|---|---|---|---|---|---|---|---|---|---|---|
| Style | Description | Color | | S | M | L | Total | Price | | Total |
| SW70000 | POPCORN OPEN CARDIGAN | | | | | | 720 | $11.50 | | $8,280.00 |
| SW70000X | POPCORN OPEN CARDIGAN | | | | | | 240 | $12.50 | | $3,000.00 |
| T70001 | CAMO FUR TOP | | | | | | 240 | $12.00 | | $2,880.00 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | TOTAL | | | $14,160.00 |
| | | | | | | 30% DEPOIT AMOUNT | | | $4,248.00 |

**PAID WITH CHECK #1001**

8/12/19



SW70000



T70001

10/18

EXHIBIT A

# Gold Reed

# INVOICE

**INVOICE# 13**

**Address:** 1458 S SAN PEDRO #L48
Los Angeles, CA 90015

**Phone:** 818-321-7577

**BILL To:**    Blue Butter Cup
2842 S GRAND AVE
LOS ANGELES, CA 90007

**INVOICE DATE:** 7/31/2019

| PO Number | Ship Date | Term | | Ship Via | | Rep | | Carton |
|---|---|---|---|---|---|---|---|---|
| **Style** | **Description** | **Color** | **S** | **M** | **L** | **Total** | **Price** | **Total** |
| SW1044 | dolman sleeve popcorn top | X | | | | 1380 | $11.50 | $15,870.00 |
| SW1044X | | X | | | | 600 | $12.50 | $7,500.00 |
| SW1010 | COLOR BLOCK OPEN CARDIGAN | X | | | | 360 | $13.30 | $4,788.00 |
| SW1011 | COLOR BLOCK POPCORN TOP | X | | | | 360 | $11.50 | $4,140.00 |
| SW1015 | TRIBAL SHAPE OPEN CARDIGAN | | | | | 240 | $13.30 | $3,192.00 |
| SW1010X | COLOR BLOCK OPEN CARDIGAN | | | | | 360 | $14.30 | $5,148.00 |
| SW1015X | TRIBAL SHAPE OPEN CARDIGAN | | | | | 240 | $14.30 | $3,432.00 |
| SW1011X | COLOR BLOCK POPCORN TOP | | | | | 360 | $12.50 | $4,500.00 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | **TOTAL** | | $48,570.00 |
| | | | | | | **30% DEPOIT AMOUNT** | | $12,186.00 |

**PAID WITH CHECK #1005, 1006, 1007**

SW1044    SW1010    SW1011    SW1015

8/22/19

EXHIBIT A

# Gold Reed

# INVOICE

**INVOICE# 12**

**Address:** 1458 S SAN PEDRO #L48
Los Angeles, CA 90015
**Phone:** 818-321-7577

**BILL To:**  Blue Butter Cup
2842 S GRAND AVE
LOS ANGELES, CA 90007

**INVOICE DATE:** 7/31/2019

| PO Number | Ship Date | Term | | Ship Via | Rep | | Carton |
|---|---|---|---|---|---|---|---|
| **Style** | **Description** | **Color** | **S** | **M** | **L** | **Total** | **Price** | **Total** |

| Style | Description | Color | S | M | L | Total | Price | Total |
|---|---|---|---|---|---|---|---|---|
| sw1040x | thunder top | | | | | 240 | $12.75 | $3,060.00 |
| sw1040 | thunder top | | | | | 240 | $11.75 | $2,820.00 |
| sw1024 | big start front top popcorn top | | | | | 360 | $12.90 | $4,644.00 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| | | |
|---|---|---|
| TOTAL | | $10,524.00 |
| 30% DEPOIT AMOUNT | | $2,500.00 |

## PAID CHECK WITH 1008

**SW1040**

11/4

11/6

**SW1024**

11/5~6

# EXHIBIT B

# EXHIBIT B

# ~~Gold~~ Reed

# INVOICE

**Address:** 1458 S SAN PEDRO #L48
Los Angeles, CA 90015
**Phone:** 818-321-7577

### INVOICE# 15

**BILL To:**  Blue Butter Cup
2842 S GRAND AVE
LOS ANGELES, CA 90007

**INVOICE DATE:** 8/30/2019

*offside cancel* →

| PO Number | Ship Date | | Term | | | | | Ship Via | | Rep | | Carton | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Style | Description | | Color | | S | M | L | | Total | Price | | Total | |
| SW1009 | COLOR POPCORN SWEATER TOP | | | | | | | | 360 | $13.50 | | $4,860.00 | |
| SW1009X | COLOR POPCORN SWEATER TOP | | | | | | | | 120 | $14.50 | | $1,740.00 | |
| SW1025 | STAR SWEATER TOP | | NO PICTURE | | | | | | 360 | $13.30 | | $4,788.00 | |
| SW1051 | POPCORN COLOR YARN OPEN CARDI | | | | | | | | 360 | $14.50 | | $5,220.00 | |
| SW1051X | POPCORN COLOR YARN OPEN CARDI | | | | | | | | 120 | $15.50 | | $1,860.00 | |
| SW1052 | STRIPE CARDIGAN | | CANCEL | | | | | | 360 | $14.50 | | $5,220.00 | |
| SW1052X | STRIPE CARDIGAN | | CANCEL | | | | | | 180 | $15.50 | | $2,790.00 | |
| SW1053 | COZY WARM OPEN CARDIGAN | | | | | | | | 240 | $14.75 | | $3,540.00 | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | Balance | | 2100 | $30,018.00 | | | |
| | | | | | | | **30% DEPOIT AMOUNT** | | | **$9,005.40** | | | |

## PAID WITH CK#1018

**SW1009**    **SW1052**    **SW1053**

EXHIBIT B

# EXHIBIT C

# EXHIBIT C

# Gold Reed

# INVOICE

**Address:** 1458 S SAN PEDRO #L48
Los Angeles, CA 90015

. **Phone:** 818-321-7577

**INVOICE# 16**

**BILL To:**  Blue Butter Cup
2842 S GRAND AVE
LOS ANGELES, CA 90007

**INVOICE DATE:** 9/9/2019

| PO Number | Ship Date | | Term | | | | | Ship Via | | Rep | Carton |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Style** | **Description** | | **Color** | | **S** | **M** | **L** | | **Total** | **Price** | **Total** |
| SW80036 | COLOR BLOCK POPCORN TOP | | MAUVE | | 40 | 40 | 40 | | 120 | $13.30 | $1,596.00 |
| | | | PURPLE | | 40 | 40 | 40 | | 120 | $13.30 | $1,596.00 |
| | | | | | 40 | 40 | 40 | | 120 | $13.30 | $1,596.00 |
| SW80037 | THIN SWEATER WITH LACE ON NECK | | NUDE | | 40 | 40 | 40 | | 120 | $11.20 | $1,344.00 |
| | | | BLACK | | 40 | 40 | 40 | | 120 | $11.20 | $1,344.00 |
| | | | D.PURPLE | | 40 | 40 | 40 | | 120 | $11.20 | $1,344.00 |
| | | | MAUVE | | 40 | 40 | 40 | | 120 | $11.20 | $1,344.00 |
| SW80037X | THIN SWEATER WITH LACE ON NECK | | MAUVE | | 40 | 40 | 40 | | 120 | $12.20 | $1,464.00 |
| | | | NUDE | | 40 | 40 | 40 | | 120 | $12.20 | $1,464.00 |
| SW80038 | COLOR BLOCK SOFT YARN TOP | | GREY | | 40 | 40 | 40 | | 120 | $13.50 | $1,620.00 |
| | | | MAUVE | | 40 | 40 | 40 | | 120 | $13.5 | $1,620.00 |
| SW80039 | MULTI COLOR STAR SWEATER TOP | | BLACK | | 60 | 60 | 60 | | 180 | $12.0 | $2,160.00 |
| | CREDIT FOR SW1052 | | | | | | | | | | |
| | | | | | | | | Balance | | | $18,492.00 |
| | | | | | | | | 30% DEPOSIT AMOUNT | | | $5,547.60 |
| | | | | | | | | CREDIT | | | ($2,124) |

**$3,423.60**


SW80036    SW80037    SW80038    SW80039



Cance.

( #1045 )

EXHIBIT C

EXHIBIT D

EXHIBIT D

# Gold Reed

# INVOICE

**INVOICE# 19**

Address: **1458 S SAN PEDRO #L48**
**Los Angeles, CA 90015**
Phone: **818-321-7577**

**BILL To:**      Blue Butter Cup
2842 S GRAND AVE
LOS ANGELES, CA 90007

*Credit note? ?)*

**INVOICE DATE: 9/16/2019**

| PO Number | Ship Date | PICTURE | | Rep | Carton |
|---|---|---|---|---|---|
| **Style** | **Description** | | **Total** | **Price** | **Total** |
| SW80074 | COLOR BLOCK SLEEVE SWEATER | | 120 | $12.10 | $1,452.00 |
| SW80078 | LEO PARD DESTROYED TOP | | 180 | $13.50 | $2,430.00 |
| KT80075 | VELVET TOP | | 360 | $10.15 | $3,654.00 |
| SW80102 | STAR ONE SHOULDER OPEN TOP | | 360 | $13.50 | $4,860.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

|  | TOTAL | $12,396.00 |
|---|---|---|
| **30% DEPOIT AMOUNT** | | **$3,718.80** |

SW80074 BLK 11/5
TAUPE 11/12
SW80078 11/14
KT80078 11/14
SW 80102

( ※ 1047 )

EXHIBIT D

# EXHIBIT E

# EXHIBIT E

# Gold Reed

# INVOICE

**INVOICE# 20**

**Address:** 1458 S SAN PEDRO #L48
Los Angeles, CA 90015

**Phone:** 818-321-7577

**BILL To:**     Blue Butter Cup
2842 S GRAND AVE
LOS ANGELES, CA 90007

**INVOICE DATE:** 9/25/2019



| PO Number | Ship Date | PICTURE | Rep | | Carton |
|---|---|---|---|---|---|
| **Style** | **Description** | | **Total** | **Price** | **Total** |
| SW80074 | COLOR BLOCK SLEEVE SWEATER | | 120 | $12.10 | $1,452.00 |
| SW80078 | LEO PARD DESTROYED TOP | | 180 | $13.50 | $2,430.00 |
| SW80068 | COLOR BLOCK SWEATER TOP | | 120 | $13.50 | $1,620.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

SWEATER
SW80074   SW80078
black       nude

SW80068

| | TOTAL | $5,502.00 |
|---|---|---|
| | **30% DEPOIT AMOUNT** | **$1,650.60** |

credit $486 ( SW80102 )

EXHIBIT E

EXHIBIT F

EXHIBIT F

## C&R LEGAL GROUP

2301 E. Gladwick Street, Rancho Dominguez, CA 90220   |   T: (213) 626-9610   |

October 25, 2019

**David H. Rho**
Email: drho@crgroupllp.com

*VIA FIRST CLASS MAIL AND ELECTRONIC MAIL*
Ms. Kislon Eunjin Kim dba "Gold Reed"
1458 S. San Pedro Street, #L48
Los Angeles, California 90015
Email: fanaticforgod@gmail.com

Re:   **NOTICE TO PRESERVE ELECTRONIC EVIDENCE**
      **Blue Buttercup adv. Kislon Eunjin Kim, et al.**
      C&R Client:   Blue Buttercup

Dear Ms. Kim:

Please be advised that this firm represents Blue Buttercup in multiple disputes arising out of your multiple breaches of contract, fraud, conversion, fraudulent misrepresentation, false promise, and alleged identity theft, based on the unauthorized use of "Blue Buttercup" and name "Lauren Lee" ("Ms. Lee"). We have also been made aware of alleged slanderous and libelous activity by you against Blue Buttercup and Ms. Lee. We request that you direct all future communications solely to this office and refrain from contacting anyone at Blue Buttercup including but not limited to current employees and officers.

Based on the serious nature of the allegations, we **demand immediate and continued preservation of any and all physical evidence** in reference to Blue Buttercup, Gold Reed, "Blue Butter Cup", all of your accounts that you set up with UPS, FashionGo, all delivery and tracking number receipts or documents as to Gold Reed, Kislon Kim, and/or Eunjin Kim including but not limited to Chinese manufacturers and/or US retailers, all documents referencing all work in the last six months with any Chinese manufacturer you currently work with or have worked with in the past, and all electronically stored information ("ESI") stored in any computer, hard drive, USB drive, flash drive, CD Rom disc, portable hard drive, smart phone, handheld device, cloud storage device, or any other media at your home, at your office at 1458 S. San Pedro Street, #L48, Los Angeles, CA 90015, or any other place where you may store your property. We further demand immediate and continued preservation of any and all communications including written communications, email communications, mail, telegram, phone records, cell phone data records, log books, cell phone data, personal cell phone information, and any other communications referencing Blue Buttercup, "Blue Butter Cup", Lauren Lee, or any orders for manufacturing or sales you, Gold Reed, or any of your affiliate companies, partners, joint venturers, agents, and/or employees have made in the last six months. For avoidance of doubt, you have a duty to preserve all information including the ESI as specified above without tampering or modifying the data in any way.

Our firm anticipates legal action against you within the next few weeks. Soon thereafter, we will be propounding discovery which shall include form interrogatories, special interrogatories, requests for production of documents, requests for admission, and other discovery that will include ESI. Our discovery and records request will cover the time period beginning on May 1, 2019 until now and all other documents in the future in reference to the above as well.

NOTICE TO PRESERVE ELECTRONIC EVIDENCE

EXHIBIT F

**C&R** LEGAL GROUP

2301 E. Gladwick Street, Rancho Dominguez, CA 90220   |   T: (213) 626-9610   |

*October 25, 2019*
*Page 2 of 2*

The documents and communications preserved as referenced herein include but is not limited to all "WRITINGS" as defined by *California Evidence Code* § 250 which states: "Writing" means handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored."

This demand shall include all digital messages, emails, text messages, video tapes, files, "tweets," Facebook posts, and other online communications and voicemail messages. We request that this demand to preserve all evidence take place immediately. **You are now on formal notice of this demand.**

There are sanctions available in California to preserve relevant evidence, of willfully destroying, deleting, or hiding evidence. "*California Penal Code* section 135 creates criminal penalties for spoliation. 'Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor.'" *Cedars-Sinai Med. Ctr. v. Superior Court* (1998) 18 Cal. 4th.

Finally in reference to the alleged slander and libel of both Blue Buttercup and Ms. Lee, we demand that you cease and desist all communications to any third party referencing either Blue Buttercup, "Blue Butter Cup", Lauren Lee, and all other affiliates, companies, employees, and/or agents of Blue Buttercup and/or Lauren Lee immediately.

Thank you for your prompt attention to these matters. Should you have any questions or if you would like to speak to me for any reason, do not hesitate to contact me at the number listed above.

Sincerely,

David H. Rho
SBN: 270598

**NOTICE TO PRESERVE ELECTRONIC EVIDENCE**

EXHIBIT F

# EXHIBIT G

# EXHIBIT G

# C&R LEGAL GROUP

2301 E. Gladwick Street, Rancho Dominguez, CA 90220   |   T: (213) 999-8475|

November 27, 2019

**David H. Rho**
Email: drho@crgroupllp.com

***VIA CERTIFIED MAIL***

| | | |
|---|---|---|
| Ms. Kislon Eunjin Kim<br>1162 4th Ave., Apt. 3<br>Los Angeles, California 90019 | Ms. Kislon Kim<br>PSD Studio, Inc.<br>1162 4th Ave., #3<br>Los Angeles, CA 90019 | Mr. Michael Lee<br>PSD Studio, Inc.<br>3660 Wilshire Blvd. Ste. 936<br>Los Angeles, CA 90010 |
| Ms. Kislon Eunjin Kim<br>dba "Gold Reed"<br>1458 S. San Pedro St. #L48<br>Los Angeles, CA 90015 | Ms. Kislon Eunjin Kim<br>dba "CREAM"<br>1458 S. San Pdro St. #L48<br>Los Angeles, CA 90015 | Nahm Sook "Grace" Kim<br>1162 4th Ave., Apt. 3<br>Los Angeles, CA 90019 |
| Lumie, Inc.<br>810 E. Pico Blvd. #312<br>Los Angeles, CA 90021 | Branche Apparel, Inc.<br>3335 E. Pico Blvd.<br>Los Angeles, CA 90023 | IT Closet<br>3335 E. Pico Blvd.<br>Los Angeles, CA 90021 |
| Ms. So Young Jung<br>19512 Kilfinan St.<br>Northridge, CA 91326 | Reveuse<br>777 E. 10th St. #109<br>Los Angeles, CA 90021 | ONYRMRK<br>3335 E. Pico Blvd.<br>Los Angeles, CA 90023 |
| Lumie & Junnie<br>3335 E. Pico Blvd.<br>Los Angeles, CA 90023 | Mr. Sang Hun Lee<br>750 Crenshaw Blvd. #302<br>Los Angeles, CA 90005 | Sung Light Clothing, Inc.<br>800 E. 12th St. #310<br>Los Angeles, CA 90021 |
| La Vida<br>800 E. 12th St. #311<br>Los Angeles, CA 90021 | Mr. Sung C. Lee<br>800 E. 12th St. #310<br>Los Angeles, CA 90021 | Olive and Leaf<br>3671 E. Olympic Blvd.<br>Los Angeles, CA 90023 |

Re:   **NOTICE TO CEASE AND DESIST**
      **NOTICE TO PRESERVE EVIDENCE**
      **Blue Buttercup adv. Kislon Eunjin Kim, et al.**
      C&R Client:   Free Sunshine Apparel, Inc. dba Blue Buttercup

Dear All:

Please be advised that this firm represents Free Sunshine Apparel, Inc. dba Blue Buttercup in multiple disputes arising out of multiple breaches of contract, fraud, conversion, fraudulent misrepresentation, false promise, identity theft, theft of intellectual property, corporate espionage, and various other potential causes of action due to your alleged conspiracy to commit fraud against Blue Buttercup in the unauthorized sales of Blue Buttercup property including but not limited to the following SKU numbers: (1) IT Closet – ICT1105, ICT1011, ICJ70000, ICT1044, ICT1008, ICT1024, ICJ1052, ICJ70000X, ICT1009, ICT71040X, ICJ1010, ICJ1010X, ICT1009, ICT1009X, ICT1024; (2) Olivia and Leaf – T1024, T1010, T1044, SW1009X, T1011, SW70000X, SW1010X, SW1040X; (3)

**NOTICE TO CEASE AND DESIST AND PRESERVE EVIDENCE**

EXHIBIT G



La Vida – 38034-SU, LVDI6077 PLUS, 37377-SU, LVDI6076 PLUS, 37377-SU PLUS, 37374-SU PLUS, 37376-SU PLUS, 37375-SU PLUS, 38033-SU PLUS, 38034-SU; (4) Sung Light Clothing, Inc. – LVDI6076 PLUS, LVDI6074 PLUS, LVDI6077 PLUS; (5) Faith – SLE9876 PLUS, SLE9874 PLUS; (**"Blue Buttercup Stolen Products"**)[1]. We request that you direct all future communications solely to this office and refrain from contacting anyone at Blue Buttercup including but not limited to current employees and officers.

Based on the serious nature of the allegations, we **demand immediate and continued preservation of any and all physical evidence** in reference to Blue Buttercup, Gold Reed, "Blue Butter Cup", all Blue Buttercup Stolen Products as referenced hereinabove, all of your accounts that you set up with UPS, FashionGo, all delivery and tracking number receipts or documents as to Gold Reed, Kislon Kim, and/or Eunjin Kim including but not limited to Chinese manufacturers and/or US retailers, all documents referencing all work in the last six months with Kislon Kim and/or Eunjin Kim, Gold Reed, Cream, PSD Studio, Inc., any Chinese manufacturer you currently work with or have worked with in the past, and all electronically stored information ("ESI") stored in any computer, hard drive, USB drive, flash drive, CD Rom disc, portable hard drive, smart phone, handheld device, cloud storage device, or any other media at your home, at your office(s), or any other place where you may store your property. We further demand immediate and continued preservation of any and all communications including written communications, email communications, mail, telegram, phone records, cell phone data records, log books, cell phone data, personal cell phone information, and any other communications referencing Blue Buttercup, "Blue Butter Cup", Gold Reed, PSD Studio, Inc., Kislon Eunjin Kim, IT Closet, Blue Buttercup Stolen Products, or any orders for manufacturing or sales you or any of your affiliate companies, partners, joint venturers, agents, and/or employees have made in the last six months. For avoidance of doubt, you have a duty to preserve all information including the ESI as specified above without tampering or modifying the data in any way.

Furthermore, as of the date of receipt of this communication, you must **immediately cease and desist all marketing, sales, and/or purchase of all Blue Buttercup Stolen Products and any pictures representing or depicting the Blue Buttercup Stolen Products.** All Blue Buttercup Stolen Products were paid for by check to PSD Studio, Inc., Gold Reed, and Kislon Kim. My client has yet to receive any of the Blue Buttercup Stolen Products that were designed and purchased by Blue Buttercup. Moreover, disclosure of the Blue Buttercup Stolen Products was a breach of contract and illegal disclosure of intellectual property, specifically trade secrets, alleged to be based on the conspiracy and fraud committed by Ms. Kislon Kim, her companies, and all of her partners, affiliates, joint venturers, employees, employers, and any other persons or entities that sold or are currently selling Blue Buttercup Stolen Products. **THIS COMMUNICATION IS FORMAL NOTICE OF POTENTIAL LAWSUIT AGAINST YOU AND/OR YOUR COMPANY. MY FIRM WILL PROSECUTE TO THE FURTHEST EXTENT OF THE LAW ANY FURTHER POTENTIAL SALES OF BLUE BUTTERCUP STOLEN PRODUCTS.**

Our firm currently anticipates legal action against you within the next few weeks. Soon thereafter, we will be propounding discovery which shall include form interrogatories, special interrogatories, requests for production of documents, requests for admission, and other discovery that

---

[1] The Blue Buttercup Stolen Products as listed may not be the comprehensive list of all products that were stolen from Blue Buttercup – more products may come to light as investigation continues. Please refrain from selling or marketing any other products from Blue Buttercup not listed. If you are not sure, please contact our office.

**NOTICE TO CEASE AND DESIST AND PRESERVE EVIDENCE**

EXHIBIT G

 **C&R** LEGAL GROUP

2301 E. Gladwick Street, Rancho Dominguez, CA 90220  |  T: (213) 999-8475|

will include ESI. Our discovery and records request will cover the time period beginning on May 1, 2019 until now and all other documents in the future in reference to the above as well.

The documents and communications preserved as referenced herein include but is not limited to all "WRITINGS" as defined by *California Evidence Code* § 250 which states: "Writing" means handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored."

This demand shall include all digital messages, emails, text messages, video tapes, files, "tweets," Facebook posts, and other online communications and voicemail messages. We request that this demand to preserve all evidence take place immediately. **You are now on formal notice of this demand.**

There are sanctions available in California to preserve relevant evidence, of willfully destroying, deleting, or hiding evidence. "*California Penal Code* section 135 creates criminal penalties for spoliation. 'Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor.'" *Cedars-Sinai Med. Ctr. v. Superior Court* (1998) 18 Cal. 4th.

Thank you for your anticipated prompt attention to these matters. Please immediately forward this communication to your attorney and have your attorney contact me or my office as soon as possible. Should you have any questions or if you or your attorney would like to speak to me for any reason, do not hesitate to contact me at the email and/or number listed above.

Sincerely,

David Rho

David H. Rho
SBN: 270598

**NOTICE TO CEASE AND DESIST AND PRESERVE EVIDENCE**

EXHIBIT G

# EXHIBIT H

EXHIBIT H

Case 2:22-ap-01146-DS   Doc 3   Filed 07/18/22   Entered 07/18/22 16:00:08   Desc

Los Angeles Police Department   COMBINED CRIME AND ARREST REPORT
INVESTIGATIVE REPORT

Page ____ of 2   03.01.00 (03/18)   Main Document   Page 100 of 138

CC: _____   DR# 1913·21157

| CASE SCREENING FACTOR(S) | | IDENTITY THEFT | | | INVEST DIV. Newt | INC # 191024000846 | | | DR # 1913·21157 |
|---|---|---|---|---|---|---|---|---|---|

**CASE SCREENING FACTOR(S)**
- ✓ SUSPECT/VEHICLE NOT SEEN
- ✓ PRINTS OR OTHER EVIDENCE NOT PRESENT
- ✓ MO NOT DISTINCT
- ✓ PROPERTY LOSS LESS THAN $5,000
- ✓ NO SERIOUS INJURY TO VICTIM
- ✓ ONLY ONE VICTIM INVOLVED

**IDENTITY THEFT**

INVEST DIV. Newt   INC # 191024000846

| | LAST NAME, FIRST, MIDDLE (OR NAME OF BUSINESS) | SEX | DESC | HT | WT | AGE | DOB |
|---|---|---|---|---|---|---|---|
| VICTIM | Lee, Min Hee | F | A | 505 | 098 | 46 | 03/07/1979 |

ADDRESS   R- 860 N Alameda St, Los Angeles, Ca   ZIP 90012   PHONE   X

B-

E-MAIL ADDRESS   CELL PHONE (323) 861-7082

**PREMISES** (SPECIFIC TYPE)   ☐ ATM

DR. LIC. NO. (IF NONE, OTHER ID # & NO.) D5804190   FOREIGN LANGUAGE SPOKEN   OCCUPATION Designer

**ENTRY** 459/BFV POINT OF ENTRY   POINT OF EXIT
- ☐ FRONT
- ☐ REAR
- ☐ SIDE
- ☐ ROOF
- ☐ FLOOR
- ☐ OTHER

METHOD

INSTRUMENT/TOOL USED

LOCATION OF OCCURRENCE   SAME AS V'S ☐   ✓ RES. ☐   BUS. ☐   R.D. 1313   PRINTS BY PREL. INV.
ATTEMPT ☐ Y ☐ N
OBTAINED ☐ Y ☐ N

1458 S San Pedro St, Los Angeles 90021

DATE & TIME OF OCCURRENCE   10/15/2019   1105

DATE & TIME REPORTED TO PD   10/24/2019   13:20

TYPE PROPERTY STOLEN/LOST/DAMAGED   ☐ 03.04.00 GIVEN
STOLEN/LOST $   RECOVERED $   EST. DAMAGED ARSON / VAND. $

**VICT'S VEH.** (IF INVOLVED) YEAR, MAKE, TYPE, COLOR, LIC. NO.   NOTIFICATION(S) (PERSON & DIVISION)   CONNECTED REPORT(S) (TYPE & DR #)

**MO** IF LONG FORM, LIST UNIQUE ACTIONS. IF SHORT FORM, DESCRIBE SUSPECT'S ACTIONS IN BRIEF PHRASES, INCLUDING WEAPON USED. DO NOT REPEAT ABOVE INFO BUT CLARIFY REPORT AS NECESSARY. IF ANY OF THE MISSING ITEMS ARE POTENTIALLY IDENTIFIABLE, ITEMIZE AND DESCRIBE ALL ITEMS MISSING IN THIS INCIDENT IN THE NARRATIVE.

Unk Susp used victs personal and buisness information without consent from vict.

TRANSIT-RELATED INCIDENT ☐   MANDATORY MARSY'S RIGHTS CARD PROVIDED TO THE VICTIM ☐   MOTIVATED BY HATRED/PREJUDICE ☐   DOMESTIC VIOLENCE ☐

| **REPORTING EMPLOYEE(S)** | INITIALS, LAST NAME | SERIAL NO. | DIV./DETAIL | PERSON REPORTING | SIGNATURE | OR RECEIVED BY PHONE ☐ |
|---|---|---|---|---|---|---|
| | Ordaz, J | 43056 | 13 | Desk | | |

NOTE: IF SHORT FORM AND VICTIM/PR ARE NOT THE SAME, ENTER PR INFORMATION IN INVOLVED PERSONS SECTION.

## THIS REPORT DOES NOT CONSTITUTE VALID IDENTIFICATION

**KEEP THIS REPORT FOR REFERENCE.  INSTRUCCIONES EN ESPAÑOL AL REVERSO.**

*Your case will be assigned to a detective for follow-up investigation based upon specific facts obtained during the initial investigation. Studies have shown that the presence of these facts can predict whether a detailed follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property, in a manner that is cost-effective to you, the taxpayer.  Significant decreases in personnel have made it impossible for detectives to personally discuss each and every case with all crime victims.  A detective will not routinely contact you, unless the detective requires additional information.*

**TO REPORT ADDITIONAL INFORMATION:**  If you have specific facts to provide which might assist in the investigation of your case, please contact the detective Monday through Friday, between 8:00 A.M. and 9:30 A.M., or between 2:30 P.M. and 4:00 P.M. at telephone number _____.  If the detective is not available when you call, please leave a message and include the telephone number where you can be reached.

**COPY OF REPORT:**  If you wish to purchase a copy of the complete report, phone (213) 486-8130 to obtain the purchase price.  Send a check or money order payable to the Los Angeles Police Department to Records and Identification Division, Box 30158, Los Angeles, CA 90030.  Include a copy of this report or the following information with your request: 1) Name and address of victims; 2) Type of report and DR number (if listed above); 3) Date and location of occurrence. NOTE: Requests not accompanied by proper payment will not be processed.

**DR NUMBER:**  If not entered on this form, the DR number may be obtained by writing to Records and Identification Division and giving the information needed to obtain a copy of the report (see above paragraph). Specify that you only want the DR number. It will be forwarded without delay.  There is no charge for this service.

**CREDIT CARDS/CHECKS:**  Immediately notify concerned credit corporation or banks to avoid possibility of being liable for someone else using your stolen or lost credit card or check.

**HOW YOU CAN HELP THE INVESTIGATION OF YOUR CASE:**
* Keep this memo for reference.
* If stolen items have serial numbers not available at time of report, attempt to locate them and phone them to the detective at the listed number.
* If you discover additional losses, complete and mail in the Supplemental Property Loss form given to you by the reporting employee.
* Promptly report recovery of property.
* Promptly report additional information such as a neighbor informing you of suspicious activity at time crime occurred.

**VICTIM ASSISTANCE PROGRAM:**  The Los Angeles City Attorney's Victim Assistance Program and Los Angeles District Attorney's Office Bureau of Victim Services can help determine if you qualify for victim compensation. If you are a victim of a qualifying crime, they will assist with filing your claim application. If you are a victim or a witness to a crime and will be going to court, they will explain the court procedures to you.  To find the program location nearest you, call the Los Angeles City Attorney's Victim Assistance Program at (213) 978-4537, or the Los Angeles County District Attorney's Office, Bureau of Victim Services, at (800) 380-3811.

**CALIFORNIA VICTIM COMPENSATION BOARD:** Refer to paragraph at bottom of reverse side.

www.LAPDOnline.org
www.joinLAPD.com

COMMERCIAL CRIMES
(213) 486-5920

EXHIBIT H

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 2301 E. Gladwick Street, Rancho Dominguez, California 90220.

On July 22, 2020 I served the following document(s) on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes described as:

FIRST AMENDED VERIFIED COMPLAINT

TO THE FOLLOWING ADDRESSEES:

Mr. Kevin Jang, Esq.
Kevin H. Jang, A Law Corporation
3435 Wilshire Blvd. Ste. 2300
Los Angeles, CA 90010
Email: khjlawcorp@gmail.com

**X BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses above and placed the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**X BY ELECTRONIC MAIL:** I caused such document(s) to be delivered by transmitting via electronic mail a true copy to the email addresses set forth below on this date before 5:00 p.m.

**X STATE:** I declare that I am an employee in the offices of a member of the State Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 22, 2020 at Los Angeles, California.

DAVID RHO

# EXHIBIT "B"

1 | David H. Rho (State Bar No. 270598)
drho@crgroupllp.com
2 | 2301 E. Gladwick Street
Rancho Dominguez, California 90220
3 | Telephone: 213.626.9610
Facsimile: 213.403.5675
4 |
Attorney for Plaintiffs
5 | Free Sunshine Apparel, Inc. and
Min Hee Lee
6 |

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| **FREE SUNSHINE APPAREL, INC. dba BLUE BUTTERCUP, a California Corporation; et al.;**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**KISLON KIM aka EUNJIN KIM aka EUN JIN KIM, an individual; PSD STUDIO, INC., a California corporation; et al.**<br><br>**Defendants.** | Case No. 19STCV45311<br><br>*[Assigned for all purposes to the Hon. Rafael A. Ongkeko]*<br><br>**NOTICE OF ENTRY OF ORDER RE: TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br><u>Hearing</u><br>Date:       July 17, 2020<br>Time:      8:30 AM<br>Dept.:      73 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 24, 2020, the Court signed the Proposed Temporary Restraining Order ("TRO Order") filed by Plaintiffs after overruling Defendants' objections to the Proposed Order.

PLEASE TAKE FURTHER NOTICE that pursuant to the TRO Order, on August 14, 2020 at 1:30 PM in Dept. 73 of the Stanley Mosk Superior Courthouse located at 111 North Hill Street, Los Angeles, CA 90012, Plaintiff Free Sunshine Apparel, Inc. will and hereby moves for an Order to Show Cause re: Preliminary Injunction ("OSC") against **ALL DEFENDANTS** in this action. This OSC is based upon this Notice, the *Ex Parte* Application for TRO and OSC re: PI ("Application"), the Opposition to the Application, the Reply to Defendants' Opposition, all supporting documents thereto, the pleadings, all other papers on file herein, and any other matter that is properly presented to this Court at the hearing on this OSC.

Attached as **Exhibit A** is a true and correct copy of the July 17, 2020 Minute Order referencing the *ex parte* Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction. Attached as **Exhibit B** is a true and correct copy of the July 24, 2020 Minute Order. Attached as **Exhibit C** is a true and correct copy of the signed Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction.

DATED: July 27, 2020

By: _____
    David H. Rho, counsel for Plaintiffs

# EXHIBIT A

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 73

**19STCV45311**                                                          July 17, 2020
**MIN HEE LEE, et al. vs GOLD REED, A DBA OF UNKNOWN**                    8:30 AM
**FORM, et al.**

| | |
|---|---|
| Judge: Honorable Rafael A. Ongkeko | CSR: None |
| Judicial Assistant: M. Y. Carino | ERM: None |
| Courtroom Assistant: E. Villanueva | Deputy Sheriff: None |

APPEARANCES:

For Plaintiff(s): David H. Rho

For Defendant(s): Kevin Jang (Court Call)

**NATURE OF PROCEEDINGS:**
Hearing on Ex Parte Application for Temporary Restraining Order

The matter is called for hearing.

The court hears from counsel and per defendant's request, with no objections from plaintiff, the matter is trailed to 2:30 p.m. this date.

The matter is recalled for hearing.

The court addresses counsel regarding stipulation and order submitted by plaintiff on 7/13/2020. The Court orders Photojio, a dba of unknown form in Complaint filed by Min Hee Lee, et al. on 12/16/2019 dismissed without prejudice.

The Court retains jurisdiction to make orders to enforce any and all terms of settlement, including judgment, pursuant to Code of Civil Procedure Section 664.6.

Ex parte application is heard and argued. Defendant's counsel is admonished regarding Court Call conduct. Plaintiff's reply is not considered. No exigent circumstances except as to defendants It Closet and Il Bianco. The Ex Parte Application for Temporary Restraining Order is denied except as to defendants It Closet and Il Bianco.

Order to Show Cause Re: Preliminary Injunction is scheduled for 08/14/2020 at 01:30 PM in Department 73 at Stanley Mosk Courthouse.

The ex parte application is deemed the motion papers on the Order to Show Cause hearing. Supplemental opposition shall be filed and served by 7/31/2020. Supplemental reply shall be filed and served by 8/7/2020.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 73

**19STCV45311**                                                        July 17, 2020
**MIN HEE LEE, et al. vs GOLD REED, A DBA OF UNKNOWN**              8:30 AM
**FORM, et al.**

Judge: Honorable Rafael A. Ongkeko          CSR: None
Judicial Assistant: M. Y. Carino            ERM: None
Courtroom Assistant: E. Villanueva          Deputy Sheriff: None

Plaintiff is to pay a fee for the hearing on the Order to Show Cause Re: Preliminary Injunction.
Plaintiff is prepare, serve and lodge a proposed order.

Moving party is to give notice.

Minute Order                                          Page 2 of 2

# EXHIBIT B

# EXHIBIT B

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

### Civil Division

Central District, Stanley Mosk Courthouse, Department 73

**19STCV45311**                                                                      July 24, 2020
**MIN HEE LEE, et al. vs GOLD REED, A DBA OF UNKNOWN**                          3:36 PM
**FORM, et al.**

Judge: Honorable Rafael A. Ongkeko                 CSR: None
Judicial Assistant: D. Haro                                  ERM: None
Courtroom Assistant: None                               Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re Temporary Restraining Order and Order to
Show Cause;

The Court signs the Proposed Temporary Restraining Order this day.

The Court overrules Defendants' objections to the proposed order.

Copies are sent to counsel this day via U.S. Mail and will be available in the Court's Website.

The 8/14/20 hearing stands as previously ordered.

Certificate of Mailing is attached.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>07/24/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ D. Haro _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Min Hee Lee  et al | |
| DEFENDANT/RESPONDENT:<br>Gold Reed, a dba of unknown form et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>19STCV45311 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re Temporary Restraining Order and Order to Show ...) of 07/24/2020, Temporary Restraining Order and Order to Show Cause  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Kevin  Jang                                                    La Vida, a dba of unknown form
Kevin H. Jang, A Law Corporation
3435 Wilshire Boulevard Suite 2300
Los Angeles, CA  90010

David H. Rho
David Rho
2301 E. Gladwick Street
Rancho Dominguez, CA  90220

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>07/24/2020</u>          By:  <u>D. Haro</u> _____
                                                   Deputy Clerk

# EXHIBIT C

# EXHIBIT C

Electronically Received 07/23/2020 04:14 PM

FILED
Superior Court of California
County of Los Angeles

07/24/2020

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Deputy
D. Haro

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| **FREE SUNSHINE APPAREL, INC. dba BLUE BUTTERCUP, a California Corporation; and MIN HEE LEE aka LAUREN LEE, an individual;** | Case No. 19STCV45311 |
| | *Assigned for all purposes to the Hon. Rafael A. Ongkeko* |
| **Plaintiffs,** | **[PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |
| **vs.** | |
| **KISLON KIM aka EUNJIN KIM aka EUN JIN KIM, an individual; PSD STUDIO, INC., a California corporation; GOLD REED, a dba of unknown form; et al.;** | Hearing |
| | Date:    July 17, 2020 |
| | Time:    8:30 a.m. |
| | Dept:    73 |
| **Defendants.** | Action Filed: December 16, 2019 |

1

[PROPOSED] TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 17, 2020 at 8:30 AM in Department 73 of the County of Los Angeles Stanley Mosk Courthouse located at 111 North Hill Street, Los Angeles, California, counsel for Plaintiff, Free Sunshine Apparel, Inc., David Rho, ("Plaintiff's Counsel") and counsel for Defendants, Kevin Jang, ("Defendants' Counsel") appeared before the Honorable Rafael A. Ongkeko in reference to Plaintiff Free Sunshine Apparel, Inc.'s ("Plaintiff") *Ex Parte* Application for Temporary Restraining Order and Request for an Order to Show Cause re: Preliminary Injunction ("Application"). Due to the last-minute service and filing of Plaintiff's Reply to Defendants' Opposition to the *Ex Parte* Application ("Reply"), the Court asked whether Defendants' counsel preferred to continue the hearing until later that day, July 17, 2020 at 2:00 p.m., or to the following Monday, July 20, 2020. Based on Defendants' counsel's preference, the Court continued the hearing on the Application to that same day, July 17, 2020 at 2:00 p.m.

At the continued hearing on the Application, Plaintiff's Counsel and Defendants' Counsel appeared before Honorable Rafael A. Ongkeko. The Court informed both counsel that the Reply **was not** reviewed and **would not** be considered as to the ruling on the Application due to the last-minute service and filing by Plaintiff's Counsel. Based upon the Application and Defendants' Opposition to the Application ("Opposition"), the Court rules as follows:

## **ORDER**

This Court having read and considered the Application, Defendants' Opposition, based on the declarations and other supporting documents filed, and oral argument at the hearing on the matter, submitted on July 17, 2020, hereby orders as follows:

## **ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

**To Defendants** KISLON KIM aka EUNJIN KIM aka EUN JIN KIM; PSD STUDIO, INC.; GOLD REED; CREAM; HIGH CALL; GRACE KIM aka NAHM SOOK KIM; LUMIE, INC.; BRANCHE APPAREL, INC.; IT CLOSET; SO YOUNG JUNG; REVEUSE; ONYRMRK; LUMIE & JUNNIE; SANGHUN LEE aka SANG HUN LEE; SUNG LIGHT CLOTHING, INC.; LA VIDA; SUNG C. LEE; OLIVE AND LEAF; AMERICAN FIT; BNS INC; IL BIANCO; and

all DOE Defendants (collectively "Defendants"):

Based upon the Verified Complaint filed in this action, the Application, declarations, other supporting documents and oral arguments filed or heard in this matter, YOU ARE HEREBY ORDERED TO APPEAR, by counsel or otherwise, on August 14, 2020 at 1:30 p.m. in Department 73 of the Superior Court of the State of California for the County of Los Angeles, Central District, Stanley Mosk Courthouse, located at 111 North Hill Street, Los Angeles, California, to show cause ("OSC") why you should not be jointly and severally enjoined from owning, using, copying, disseminating, distributing, publishing, causing to publish, marketing, and/or selling any of Plaintiff's property and designs including but not limited to the actual products, their designs, photoshoots, image files, samples, pattern designs, and Blue Buttercup Stolen Property (defined in the Application, Verified Complaint, and the Declarations of Min Hee Lee and David Rho in Support of the *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction including the Reply to the Opposition thereto), whether through postings on FashionGo.com website or any other marketplace platform for women's apparel including internet forums, websites, company sites, and/or through private channels and/or sales.

## **IT IS FURTHER ORDERED**:

1.      The Application, Defendants' Opposition to the Application, and the Reply to Defendants' Opposition including all supporting documents thereto shall serve as the moving papers for the OSC ("Motion").

2.      Opposition(s) to the Motion including all papers in support of the Opposition(s) must be filed in Department 73 and served on all Plaintiff's counsels via email by July 31, 2020.

3.      Plaintiff's reply must be filed in Department 73 and served upon Defendants and/or their counsel via email by August 7, 2020.

4.      All filing fees for the OSC to be paid by Plaintiff on or before August 14, 2020.

## **TEMPORARY RESTRAINING ORDER**

**To Defendants** IT CLOSET and IL BIANCO (collectively "TRO Defendants"):

[PROPOSED] TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Plaintiff's request for Temporary Restraining Order ("TRO") has been **<u>DENIED</u>** as to

Defendants with the exception of the following defendants: IT CLOSET and IL BIANCO ("TRO

Defendants"). Pending hearing on the OSC, the above-named TRO Defendants are hereby

enjoined, jointly and severally, from owning, using, copying, disseminating, distributing,

publishing, causing to publish, marketing, and/or selling any of Plaintiff's property and copyrights

including but not limited to the actual products, their designs, photoshoots, image files, samples,

pattern designs, and Blue Buttercup Stolen Property (defined in the Application, Verified

Complaint, and the Declarations of Min Hee Lee and David Rho in Support of the *Ex Parte*

Application for Temporary Restraining Order and Order to Show Cause re: Preliminary

Injunction), whether through postings on the FashionGo.com website or any other marketplace

platform for women's apparel including internet forums, websites, company sites, and/or through

private channels and/or sales. This TRO shall remain unchanged and shall continue in full force

and effect until this Court's ruling on Plaintiff's OSC.

     FURTHER:

_____

_____

_____

_____

_____

_____

**IT IS SO ORDERED:**

Dated:   07/24/2020

Rafael A. Ongkeko / Judge

Hon. Rafael A. Ongkeko
Judge of the Stanley Mosk Superior Court

4
**[PROPOSED]** TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 2301 E. Gladwick Street, Rancho Dominguez, California 90220.

On July 27, 2020, I served the following document(s) on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes described as:

**NOTICE OF ENTRY OF ORDER RE: TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

TO THE FOLLOWING ADDRESSEE(S):

Mr. Kevin Jang, Esq.
Kevin H. Jang, A Law Corporation
3435 Wilshire Blvd. Ste. 2300
Los Angeles, CA 90010
Email: khjlawcorp@gmail.com

**X BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses above and placed the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**X BY ELECTRONIC MAIL:** I caused such document(s) to be delivered by transmitting via electronic mail a true copy to the email addresses set forth above on this date before 5:00 p.m.

**X STATE:** I declare that I am an employee in the offices of a member of the State Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 27, 2020 at Los Angeles, California.

_____

DAVID RHO

---

**NOTICE OF ENTRY OF ORDER RE: TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

# EXHIBIT "C"

Electronically FILED by Superior Court of California, County of Los Angeles on 10/26/2020 12:57 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Panganiban,Deputy Clerk

1  David H. Rho (State Bar No. 270598)
   drho@crgroupllp.com
2  2301 E. Gladwick Street
   Rancho Dominguez, California 90220
3  Telephone: 213.626.9610
   Facsimile: 213.403.5675
4
   Attorney for Plaintiffs
5  Free Sunshine Apparel, Inc. and
   Min Hee Lee
6
7               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8          **COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE**

9                                        | Case No. 19STCV45311
                                         | *Related to Lead Case 19STCV42093*
10 **FREE SUNSHINE APPAREL, INC. dba BLUE**
   **BUTTERCUP, a California Corporation; et al.;** | [*Assigned for all purposes to the Hon. Dennis*
11                                       | *J. Landin*]
                 **Plaintiffs,**
12
13 **vs.**                               | **NOTICE OF ENTRY OF ORDER RE:**
                                         | **PRELIMINARY INJUNCTION AND**
14 **KISLON KIM aka EUNJIN KIM aka EUN JIN** | **PROOF OF BOND**
   **KIM, an individual; PSD STUDIO, INC., a**
15 **California corporation; et al.**    | <u>Hearing</u>
                                         | Date:          October 6, 2020
16                                       | Time:          9:00 AM
                 **Defendants.**         | Dept.:         51
17
18                                       | Action Filed:  December 16, 2019
                                         | Trial Date:    March 1, 2022
19
20
21
22
23
24
25
26
27
28

────────────────────────────────────────────────────────────
        **NOTICE OF ENTRY OF ORDER RE: PRELIMINARY INJUNCTION AND PROOF OF BOND**

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 22, 2020, the Court signed the Order for Preliminary Injunction ("PI Order") filed by Plaintiffs memorializing the Court's ruling in the Order to Show Cause re: Preliminary Injunction hearing held on October 6, 2020 at 9:00 AM in Department 51 of the Los Angeles Stanley Mosk Courthouse.

PLEASE TAKE FURTHER NOTICE that pursuant to the PI Order, on October 26, 2020, Plaintiff Free Sunshine Apparel, Inc. caused the deposit of the bond of thirty thousand dollars ($30,000) with the Los Angeles County Superior Court.

Attached as **Exhibit A** is a true and correct copy of the PI Order signed by the Court on October 22, 2020. Attached as **Exhibit B** is a true and correct copy of the cashier's check and the receipt from the Superior Court of California, County of Los Angeles, Stanley Mosk Courthouse after submittal of the cashier's check for $30,000 stapled to the customer's portion of the cashier's check.

DATED: October 26, 2020

By: _____
       David H. Rho, counsel for Plaintiffs

# EXHIBIT A

# EXHIBIT A

Electronically Received 10/07/2020 10:02 PM

**FILED**
Superior Court of California
County of Los Angeles

**10/22/2020**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ J. Clavero _____ Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| **FREE SUNSHINE APPAREL, INC. dba BLUE BUTTERCUP, a California Corporation; and MIN HEE LEE aka LAUREN LEE, an individual;**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**KISLON KIM aka EUNJIN KIM aka EUN JIN KIM, an individual; PSD STUDIO, INC., a California corporation; GOLD REED, a dba of unknown form; et al.;**<br><br>**Defendants.** | Case No. 19STCV45311<br>*Related to Lead Case 19STCV42093*<br><br>*Assigned for all purposes to the Hon. Dennis J. Landin, Dept. 51*<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION**<br><br><u>Hearing</u><br>Date:    October 6, 2020<br>Time:    9:00 a.m.<br>Dept:    51<br><br>Action Filed: December 16, 2019 |

1

1    <u>**ORDER FOR PRELIMINARY INJUNCTION**</u>

2    **TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

3    On October 6, 2020 at 9:00 AM in Department 51 of the County of Los Angeles Stanley

4    Mosk Courthouse located at 111 North Hill Street, Los Angeles, California, counsel for Plaintiff,

5    Free Sunshine Apparel, Inc., David Rho, ("Plaintiff's Counsel") and counsel for Defendants, Kevin

6    Jang, ("Defendants' Counsel") appeared telephonically before the Honorable Dennis J. Landin in

7    reference to Plaintiff Free Sunshine Apparel, Inc.'s ("Plaintiff") Order to Show Cause re:

8    Preliminary Injunction ("OSC"). After consideration of the briefs and arguments of counsel, the

9    evidence filed in support of and opposition to the OSC, and being fully advised, the Court grants

10    Plaintiff's Order to Show Cause re: Preliminary Injunction as follows:

11    **IT IS HEREBY ORDERED** that defendants KISLON KIM aka EUNJIN KIM aka EUN

12    JIN KIM; PSD STUDIO, INC.; GOLD REED; CREAM; HIGH CALL; GRACE KIM aka NAHM

13    SOOK KIM; LUMIE, INC.; BRANCHE APPAREL, INC.; IT CLOSET; SO YOUNG JUNG;

14    REVEUSE; ONYRMRK; LUMIE & JUNNIE; SANGHUN LEE aka SANG HUN LEE; SUNG

15    LIGHT CLOTHING, INC.; LA VIDA; SUNG C. LEE; OLIVE AND LEAF; AMERICAN FIT;

16    BNS INC; IL BIANCO; all DOE Defendants; and all defendants' respective agents, representatives,

17    and any person on behalf of, and/or under direction of said defendants (collectively "Defendants")

18    are hereby enjoined and refrained from owning, using, copying, disseminating, distributing,

19    publishing, causing to publish, marketing, and/or selling any of Plaintiff's property and designs

20    including but not limited to the actual products, their designs, photoshoots, image files, samples,

21    pattern designs, and Blue Buttercup Stolen Property ("Blue Buttercup Stolen Property" is defined

22    as all of Plaintiff's products, SKUs, samples, and photographs depicting the products, SKUs, and

23    samples as defined hereinbelow, in the Application for Temporary Restraining Order, Verified

24    Complaint, Verified First Amended Complaint, and the Declarations of Min Hee Lee in Support of

25    the *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re: Preliminary

26    Injunction including the Reply to the Opposition thereto), whether through postings on

27    FashionGo.com website or any other marketplace platform for women's apparel including internet

28

forums, websites, company sites, and/or through private channels and/or sales including the but not limited to the following SKUs as identified in the Verified Complaint, Verified First Amended Complaint, and the Declarations of Min Hee Lee in Support of the Temporary Restraining Order, the Preliminary Injunction, and the Replies thereto: (1) SW1009; (2) SW1024; (3) SW1025; (4) SW1040; (5) SW1044; (6) SW1044x; (7) SW1052; (8) SW80037; (9) T70001; (10) SW1010; (11) SW1010x; (12) SW1011; (13) SW1011x; (14) SW1015; (15) SW1015x; (16) SW1099; (17) SW1099x; (18) SW7000; (19) SW80074; (20) KT80075; (21) SW70000; (22) 1040x; (23) SW70000x; (24) SW1009x; (25) SW1025; (26) SW1051; (27) SW1051x; (28) SW1052; (29) SW1052x; (30) SW1053; (31) SW80036; (32) SW80037x; (33) SW80038; (34) SW80039; (35) SW80074; (36) SW80078; (37) KT80075; (38) SW80102; and (39) SW80068 (collectively "Products").

Further, Plaintiff Free Sunshine Apparel, Inc. is directed to file and serve proof of bond in the amount of thirty thousand dollars ($30,000) by October 26, 2020. If the bond is not filed and served by October 26, 2020, the order for injunction shall dissolve.

THE COURT FURTHER ORDERS:

IT IS SO ORDERED:

Dated:   10/22/2020



Hon. Dennis J. Landin
Judge of the ~~Stanley Mosk~~ Superior Court
Dennis J. Landin / Judge

3

**ORDER FOR PRELIMINARY INJUNCTION**

# EXHIBIT B

# EXHIBIT B



**Terms and Conditions (Remitter and Payee):**

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
  - Please cash/deposit this Cashier's Check as soon as possible to
    prevent this from occurring
  - In most cases, the funds will be considered "abandoned"
    before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
  - Stop Payment can only be placed if the Cashier's Check
    is lost, stolen, or destroyed
  - We may not re-issue or refund the funds after the stop payment has
    been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY          Customer Copy
**CASHIER'S CHECK**                          1158245608

                                             10/19/2020
                                             Void after 7 years

**Remitter:**    FREE SUNSHINE APPAREL, INC.

                                             $** 30,000.00 **

**Pay To The**   LOS ANGELES SUPERIOR COURT
**Order Of:**

Memo:----------------------------------------------------
Note: For information only. Comment has no effect on bank's payment.

Drawer:  **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

---

282111107 NEW 01/08 8810004306

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK    **CASHIER'S CHECK**    HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**CHASE**                                                          1158245608    91-2
                                                                                  1221

**Remitter:**    FREE SUNSHINE APPAREL, INC.    Date    10/19/2020    Void after 7 years

**Pay To The**   LOS ANGELES SUPERIOR COURT
**Order Of:**

**Pay:**   THIRTY THOUSAND
           DOLLARS AND 00 CENTS                              $** 30,000.00 **

Do not write outside this box

Memo:----------------------------------------------------
Note: For information only. Comment has no effect on bank's payment.

Drawer:  **JPMORGAN CHASE BANK, N.A.**

Reginald Chambers, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Phoenix, AZ

⑈1158245608⑈ ⑆122100024⑆ 806002234⑈

Superior Court of California
County of Los Angeles
111 North Hill Street
Los Angeles, CA 90012

**ter and Payee):**

Receipt    ST-2020-0322006.1
Payor:     David Rho
Date:      10/26/2020
Time:      11:15 AM

ur record of the transaction
will consider these funds to be "abandoned"
t cashed by a certain time
is Cashier's Check as soon as possible to
irring

CASE # 19STCV46311
MIN HEE LEE, et al. vs GOLD REED, A

ds will be considered "abandoned"
' Date

| Cash Bond | | 30,000.00 |
| | Case Total: | 30,000.00 |

a Cashier's Check
y be placed if the Cashier's Check

| Check #: 1158245608 | 30,000.00 |
| 195707 | 30,000.00 |

oyed
r refund the funds after the stop payment has
lays after the original check was issued

preliminary injunction

Balance :                    0.00

to report a lost, stolen, or destroyed Cashier's Check
or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY          **Customer Copy**
**CASHIER'S CHECK**                          1158245608

                                             10/19/2020
                                             Void after 7 years

**Remitter:**   FREE SUNSHINE APPAREL, INC.

                                             $** 30,000.00 **

**Pay To The**   LOS ANGELES SUPERIOR COURT
**Order Of:**

Memo: ------------------------------------------------------------
Note: For information only. Comment has no effect on bank's payment.

Drawer:  **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 2301 E. Gladwick Street, Rancho Dominguez, California 90220.

On October 26, 2020, I served the following document(s) on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes described as:

**NOTICE OF ENTRY OF ORDER RE: PRELIMINARY INJUNCTION AND PROOF OF BOND**

TO THE FOLLOWING ADDRESSEE(S):

Mr. Kevin Jang, Esq.
Kevin H. Jang, A Law Corporation
3435 Wilshire Blvd. Ste. 2300
Los Angeles, CA 90010
Email: khjlawcorp@gmail.com

**X BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses above and placed the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**X BY ELECTRONIC MAIL:** I caused such document(s) to be delivered by transmitting via electronic mail a true copy to the email addresses set forth above on this date before 5:00 p.m.

**X STATE:** I declare that I am an employee in the offices of a member of the State Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 26, 2020 at Los Angeles, California.

DAVID RHO

# EXHIBIT "D"

David Y. Choi (State Bar No. 263917)
david.choi@rimonlaw.com
RIMÔN P.C.
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone: 213.516.4111

David H. Rho (State Bar No. 270598)
drho@crgroupllp.com
2301 E. Gladwick Street
Rancho Dominguez, California 90220
Telephone: 213.626.9610
Facsimile: 213.403.5675

Attorney for Plaintiffs
Free Sunshine Apparel, Inc. and
Min Hee Lee

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| **FREE SUNSHINE APPAREL, INC. dba BLUE BUTTERCUP, a California Corporation; et al.;**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**KISLON KIM aka EUNJIN KIM aka EUN JIN KIM, an individual; PSD STUDIO, INC., a California corporation; et al.**<br><br>**Defendants.** | Case No. 19STCV45311<br><br>*[Assigned for all purposes to the Hon. Lawrence P. Riff, Department 51]*<br><br>**NOTICE OF RULING RE: DEFENDANTS'** *EX PARTE* **APPLICATION TO CONTINUE TRIAL**<br><br>Dept.:                              73<br>Complaint Filed:        December 16, 2019<br>Trial Date:                 Not Assigned<br><br>Hearing Date: February 22, 2022<br>Hearing Time: 9:30 A.M.<br>Dept.:          51<br><br>Trial Date:     March 25, 2022<br>Time:            9:30 a.m.<br><br>Action Filed:  December 16, 2019 |

NOTICE OF RULING RE: DEFENDANTS' *EX PARTE* APPLICATION TO CONTINUE TRIAL

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that at 9:30 AM on February 22, 2022 in Department 51 of the

3 Superior Court of the State of California, Stanley Mosk Courthouse located at 111 N. Hill Street,

4 Los Angeles, CA 90012, the Court held the hearing on Defendants' *Ex Parte* Application to

5 Continue Trial ("Application") continued from February 18, 2022. Appearing on behalf of

6 Defendants was Mr. Sung Woo Choi from Logos Professional Law Group. Appearing on behalf of

7 Plaintiffs by video appearance were Mr. David Choi of Rimôn Law and Mr. David Rho of CR

8 Group, LLP.

9   At the hearing on the Application, Defendants Grace Kim and Kislon Kim were sworn in

10 and testified that they had tickets purchased for a flight to Seoul, South Korea from LAX to leave

11 on February 24, 2022 and return on March 20, 2022 due to the very serious health condition of

12 their mother/grandmother.

13   Based on the testimony in the matter and oral argument by counsel, the Court ruled as

14 follows:

15   1.  Trial date is continued from March 1, 2022 to March 25, 2022 at 9:30 AM in

16       Department 51 of Stanley Mosk Courthouse.

17   2.  Defendants Grace Kim and Kislon Kim shall appear in person for the first day of trial

18       at 9:30 AM unless they receive a public health order, in which case they shall appear

19       remotely on LACourtConnect.

20   Attached to this Notice is the corresponding Minute Order of the Court.

21

22 DATED: February 22, 2022

23

24

25

26   David H. Rho, counsel for Plaintiffs

27

28

---

**NOTICE OF RULING RE: DEFENDANTS' *EX PARTE* APPLICATION TO CONTINUE TRIAL**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 51

**19STCV45311**                                                          February 22, 2022
**MIN HEE LEE, et al. vs GOLD REED, A DBA OF UNKNOWN**                    9:30 AM
**FORM, et al.**


Judge: Honorable Lawrence P. Riff            CSR: None
Judicial Assistant: J. Clavero               ERM: None
Courtroom Assistant: A. Alba                 Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): David Y Choi (by Video Appearance); (Video Appearance) David H. Rho

For Defendant(s): Sung Woo Choi


**NATURE OF PROCEEDINGS:** Hearing on Ex Parte Application to Continue Trial Date; Final Status Conference

Agnes Woo, Korean interpreter, certification/registration number 301099, interpreted for Defendant Grace Kim. Interpreter's certification/registration number has been verified by the Court and the Oath is on file.

The matter is called for hearing.

Defendants Grace Kim and Kislon Kim are placed under oath and testify.

After hearing testimony, the Court finds good cause shown and continues the trial date as follows:

On the Court's own motion, the Jury Trial (5-7 day estimate) scheduled for 03/01/2022 is continued to 03/25/2022 at 09:30 AM in Department 51 at Stanley Mosk Courthouse.

The Court orders Defendants Grace Kim and Kislon Kim to appear in person for the first day of trial set on March 25, 2022 at 9:30 a.m. in Department 51. If the defendants cannot appear in person due to a public health order, the defense counsel must be notified and defendants are ordered to appear remotely at no cost on LACourtConnect.

Plaintiff's counsel David Rho to give notice.

1

## PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

2

3

      I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 2301 E. Gladwick Street, Rancho Dominguez, California 90220.

4

5

      On February 22, 2022, I served the following document(s) on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes described as:

6

### NOTICE OF RULING RE: DEFENDANTS' *EX PARTE* APPLICATION TO CONTINUE TRIAL

7

      TO THE FOLLOWING ADDRESSEE(S):

8

9

Mr. Sung Woo Choi, Esq.
Logos Professional Law Corp.
3435 Wilshire Blvd. Ste. 1810
Los Angeles, CA 90010
Email: choi@logoslawyers.com

10

11

12

**X BY ELECTRONIC MAIL:** I caused such document(s) to be delivered by transmitting via electronic mail a true copy to the email addresses set forth above on this date.

13

**X STATE:** I declare that I am an employee in the offices of a member of the State Bar of this Court at whose direction the service was made.

14

15

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

16

      Executed on February 22, 2022 at Los Angeles, California.

17

18

19

20

      DAVID RHO

21

22

23

24

25

26

27

28

---

**NOTICE OF RULING RE: DEFENDANTS' *EX PARTE* APPLICATION TO CONTINUE TRIAL**

# EXHIBIT "E"

Electronically FILED by Superior Court of California, County of Los Angeles on 03/25/2022 05:29 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Panganiban,Deputy Clerk

David Y. Choi (State Bar No. 263917)
david.choi@rimonlaw.com
RIMÔN P.C.
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone: 213.516.4111

David H. Rho (State Bar No. 270598)
drho@crgroupllp.com
2301 E. Gladwick Street
Rancho Dominguez, California 90220
Telephone: 213.626.9610
Facsimile: 213.403.5675

Attorney for Plaintiffs
Free Sunshine Apparel, Inc. and
Min Hee Lee

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| **FREE SUNSHINE APPAREL, INC. dba BLUE BUTTERCUP, a California Corporation; et al.;**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**KISLON KIM aka EUNJIN KIM aka EUN JIN KIM, an individual; PSD STUDIO, INC., a California corporation; et al.**<br><br>**Defendants.** | Case No. 19STCV45311<br><br>*[Assigned for all purposes to the Hon. Lawrence P. Riff, Department 51]*<br><br>**NOTICE OF RULING RE: DEFENDANT KISLON KIM'S *EX PARTE* APPLICATION TO CONTINUE TRIAL**<br><br>Hearing Date:  March 25, 2022<br>Hearing Time: 8:30 A.M.<br>Dept.:            51<br><br>Trial Date:     April 25, 2022<br>Time:            9:30 a.m.<br><br>Action Filed:  December 16, 2019 |

**NOTICE OF RULING RE: KISLON KIM *EX PARTE* APPLICATION TO CONTINUE TRIAL**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 8:30 AM on March 25, 2022 in Department 51 of the Superior Court of the State of California, Stanley Mosk Courthouse located at 111 N. Hill Street, Los Angeles, CA 90012, the Court held the continued hearing on Defendant Kislon Kim's *Ex Parte* Application to Continue Trial 60 Days ("Application") continued from March 23, 2022. Appearing on behalf of Defendants was Mr. Sung Woo Choi from Logos Professional Law Group. Appearing on behalf of Plaintiffs by video appearance was Mr. David Rho of CR Group, LLP.

At the original *ex parte* hearing on March 23, 2022, the Court tentatively ruled to continue the trial date from March 25, 2022 to either April 8, 2022 or April 25, 2022 to be determined after meet & confer and stipulation between the parties in reference to the possible release of the bond.

The parties did not agree to stipulate. Subsequently, prior to the continued Application heard on March 25, 2022, Defendant Ms. Kim and Defendants' counsel each submitted supplemental declarations in reference to the March 23, 2022 *ex parte* application.

Based on the declarations in the matter and oral argument by counsel, the Court ruled as follows:

1. Application is granted in part.
2. Trial date is continued from March 25, 2022 to April 25, 2022 at 9:30 AM in Department 51 of Stanley Mosk Courthouse.
3. Trial date is firm.

Attached to this Notice are true and correct copies of: (1) the minute order of the Court from the original *ex parte* application on March 23, 2022 and (2) the minute order on this continued Application.

DATED: March 25, 2022

By: _____
David H. Rho, counsel for Plaintiffs

---

**NOTICE OF RULING RE: KISLON KIM *EX PARTE* APPLICATION TO CONTINUE TRIAL**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 51

**19STCV45311**                                                                          March 23, 2022
**MIN HEE LEE, et al. vs GOLD REED, A DBA OF UNKNOWN**                          8:30 AM
**FORM, et al.**

Judge: Honorable Lawrence P. Riff                    CSR: None
Judicial Assistant: J. Clavero                       ERM: None
Courtroom Assistant: A. Alba                         Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): David Y Choi (Telephonic); David H. Rho

For Defendant(s): Sung Woo Choi

**NATURE OF PROCEEDINGS:** Hearing on Ex Parte Application to Continue Trial Date 60
Days

The matter is called for hearing.

The Court, having read and considered all papers filed, now hears oral argument.

Counsel are ordered to meet and confer.

LATER, the matter is recalled and the Court orders the following:

On the Court's own motion, the Hearing on Ex Parte Application to Continue Trial Date 60 Days
scheduled for 03/23/2022 is continued to 03/25/2022 at 08:30 AM in Department 51 at Stanley
Mosk Courthouse.

The Court informs counsel that the Court's tentative is to grant in part the ex parte application
and continue the non-jury trial either to April 8, 2022 or April 25, 2022.

Notice is waived.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 51

**19STCV45311**                                                          March 25, 2022
**MIN HEE LEE, et al. vs GOLD REED, A DBA OF UNKNOWN**                          9:30 AM
**FORM, et al.**

Judge: Honorable Lawrence P. Riff          CSR: None
Judicial Assistant: J. Clavero             ERM: None
Courtroom Assistant: A. Alba               Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): David H. Rho (by Video Appearance)

For Defendant(s): Sung Woo Choi

**NATURE OF PROCEEDINGS:** Non-Jury Trial (5-7 day estimate); Hearing on Ex Parte Application to Continue Trial Date 60 Days

The matter is called for hearing.

The Court, having read and considered all papers filed, now hears oral argument.

After hearing oral argument, the Court rules as follows:

The Ex Parte Application to Continue Trial Date 60 Days filed by Kislon Kim on 03/21/2022 is Granted in Part.

On the Court's own motion, the Non-Jury Trial (5-7 day estimate) scheduled for 03/25/2022 is continued to 04/25/2022 at 09:30 AM in Department 51 at Stanley Mosk Courthouse.

Plaintiff's counsel to give notice.

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 2301 E. Gladwick Street, Rancho Dominguez, California 90220.

On March 25, 2022, I served the following document(s) on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes described as:

**NOTICE OF RULING RE: KISLON KIM'S *EX PARTE* APPLICATION TO CONTINUE TRIAL 60 DAYS**

TO THE FOLLOWING ADDRESSEE(S):

Mr. Sung Woo Choi, Esq.
Logos Professional Law Corp.
3435 Wilshire Blvd. Ste. 1810
Los Angeles, CA 90010
Email: choi@logoslawyers.com

**X BY ELECTRONIC MAIL:** I caused such document(s) to be delivered by transmitting via electronic mail a true copy to the email addresses set forth above on this date.

**X STATE:** I declare that I am an employee in the offices of a member of the State Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 25, 2022 at Los Angeles, California.

DAVID RHO